## LACEY *vs.* DAVIS and MCFARREN.

In case of the loss of an original Government Patent, a copy from the record of the General Land Office, certified by the Commissioner, under the seal of the office, is admissible in evidence, without further proof. The provisions of Chapter 102, Revised Statutes, have no relation to such cases, which are governed by the laws of the United States.

Under the Act of April 12, 1827 (*L.* 1833, *p.* 331), a deed executed and acknowledged in the State of New York, in conformity with its laws, although there is no certificate of the proper certifying officer, that the officer taking the acknowledgment of such deed, is such officer as by his certificate of acknowledgment he purports to be, *duly commissioned and qualified,* is entitled to record in this State; and, the record being entitled to be read in evidence, the original is also admissible, without preliminary proof.[*]

One in possession of land claiming title, can acquire no additional interest by suffering the land to be sold for taxes, and becoming the purchaser, if such taxes were a lien upon the land at the time of his taking the possession; and it is immaterial whether the land was assessed to the occupant, or to one having no title or claim of title, or as "non-resident."

By the Act of 1843 (*Sess. L.* 1843, *p.* 79), sales for taxes were to commence on the first Monday of October, and continue from day to day (Sundays excepted), until, etc. The Auditor's deed recited the sale of a parcel of land to have been made on the 11th of October; but this was held no evidence to invalidate the sale, and that it was incumbent on the party objecting to the deed to show a non-compliance with the statute.

The law of 1842 (unlike the Revised Statutes of 1838), did not require assessment rolls to be signed by the Assessors. Their signatures to the certificate annexed, is the only authentication required by statute. Sibley *vs.* Smith (2 *Mich.,* 476), does not apply to cases arising under the law of 1842.

Objection was made to the record of the proceedings of Supervisors, that it did not show who constituted the board, nor that a quorum was present, and that there was no signature or authentication by the clerk or presiding officer of the board. *Held,* that the presence of the Supervisors, or at least a quorum, would be presumed; that, although it was proper and desirable that the record should be signed, the signature of the presiding officer was not necessary.

A penalty of ten per cent., added to taxes unpaid up to a certain period, is not excessive; and, being imposed by the statute, does not invalidate a sale for delinquent taxes.

When the Supervisor, without any action of the electors or the Township Board,

---

[*] See *Sess. L.* 1839, *page* 219, *Sec.* 31.

added a certain amount to the tax roll for township expenses, that portion of the tax being illegal and void, and, from the nature of the case, not distinguishable from the valid part, the sale of premises under and by virtue of the tax so levied, in an action of ejectment for their recovery, was held void. To obviate the effect of the law, making the tax deed *prima facie* evidence of the regularity of all proceedings up to its date, such evidence must be produced by the party objecting as will exclude any reasonable presumption of regularity. There must be such evidence of irregularity as to require explanation. The evidence must be of matters peremptory and not directory. Some specific defect, the insufficiency of some particular act, or the non-performance of some requisite duty, must be shown.

Case reserved from Ingham Circuit.

This was an action of ejectment, to recover possession of 160 acres in the township of Bunkerhill, Ingham county. The cause was tried before the Hon. David Johnson, Circuit Judge, without a jury, and upon the trial and argument of the cause the Circuit Judge found and certified to this Court the following facts : The plaintiff showed a conveyance of the premises from the United States to W. Peabody, by patent, dated August 2d, 1837, and a registered chain of title from Peabody, through intermediate grantors, down to himself. It was admitted that defendants were in possession of the premises, and had been for six years preceding the commencement of the suit, which was January 3d, 1854. The Court below held that the patent and several successive conveyances, proved by the plaintiff, gave him the right, *prima facie*, to recover, unless some of the following objections made by defendants to the introduction of the patent and the subsequent deeds by plaintiff, were well taken. *First:* The patent from the United States to Peabody, was proved by an exemplified copy of the record at Washington, certified under the hand and seal of the Commissioner of the General Land Office, and it was objected that the certificate did not state that the exemplification was of the *whole* record. One of the deeds in the plaintiff's chain of title was offered to be proved by the Record of Deeds of

Ingham county, but the deed having been executed in the State of New York, and the certificate of the County Clerk in that State omitting to state that the execution and acknowledgment were in accordance with the laws of that State, it was ruled out. The plaintiff then produced the original deed, and, after proving that the subscribing witnesses resided in New York at the time of its execution and delivery, he was permitted to prove it by proof of the handwriting of the witnesses and of the grantor. It was objected that the deed was not proved to have been executed according to the laws of New York or of this State, as there was no proof of the acknowledgment by the grantor, or of the signature of the person taking the acknowledgment. The objections were overruled, and the deed read in evidence. Similar objections were made to other deeds produced by the plaintiff, which were also overruled.

The defendants produced in evidence a deed of the premises from the Auditor General to John Raynor, dated March 9th, 1847, given in pursuance of a sale of said lands, made October 11th, 1844, for the delinquent taxes of 1842, to which objection was made by plaintiff that the premises, as appeared by the recital in the deed, were sold October 11, 1844, whereas by law they were required to be sold on the first Monday in October. The defendants then produced a deed of the premises from the Auditor General to L. C. Smith, dated January, 1844, in pursuance of a tax sale made October, 1843, for delinquent taxes of 1839. It was objected to this deed, that the title claimed by it was cumulative to the title acquired by the last mentioned deed. The defendants then produced a deed of the premises from the Auditor General to John Raynor, dated February 8, 1848, in pursuance of a sale of said premises in October, 1846, for delinquent taxes of 1844. The same objection was made as to the preceding deed. All the objections were overruled, and the deeds read in evidence. The defendants next

produced a deed of the premises from the Auditor General to said Raynor, dated June 6, 1853, made in pursuance of a sale of said premises, October, 4, 1848, for delinquent taxes of 1846. This deed was objected to, for the reason that the title claimed thereby was cumulative, it appearing, by the confession of the defendants, that they were in possession of said premises prior to said sale, which objection was sustained by the Court, and the deed ruled out. The defendants offered a similar deed, dated October 27, 1851, in pursuance of a sale made October, 1850, for delinquent taxes of 1848. There was the same objection and ruling in respect to this as to the preceding deed. The location of the lands in the county and township aforesaid was admitted; also, that John Raynor resided in said county, and that defendants held possession under him.

The plaintiff produced, proved, and read in evidence a deed from said L. C. Smith, the grantee in one of the Auditor General's deeds above mentioned, to John Raynor, dated May 10, 1844, and showed that, prior to that date, Smith had possession of the premises and made improvements thereon before he sold to Raynor, and that at the sale to Raynor, he delivered up possession to Davis, one of defendants, who ever since has held for Raynor. There was no proof of possession of the other defendant, except the admission above stated.

The plaintiff further showed, in reference to the tax of 1839, that the assessment roll of the township for that year was not signed by the Assessors. Other objections were made to said tax, but the above was considered fatal, and they were not considered by this Court. In reference to the tax of 1842, it was shown that the assessment roll was not signed by the Assessors, but their certificate was attached and signed as required by law, and also, that, as appeared by the assessment roll, the amount assessed to the property in question was $13.82, but that the amount reported by the

County Treasurer to the Auditor General, as a charge upon the premises on account of said tax, was $15.20, being an addition of nearly ten per cent. It was thirdly objected, that the records of the Board of Supervisors for that year showed no equalization of the assessment rolls or apportionment of taxes, and that the record was defective, because it was not authenticated or signed by either the clerk or presiding officer of the board.

In reference to the tax of 1844, it was insisted that the record of the proceedings of the Board of Supervisors for that year was defective, in not having the signature of either the clerk or presiding officer of the board, and as to the township proceedings and records for this year, it was objected that the assessment roll was not signed by the Assessors, but the certificate attached was duly signed; and also, that it appeared that the sum of $90.64 was collected that year for township purposes, but it did not appear from the township record that any sum was voted to be raised by the electors of the town or the Township Board. Several other points were taken at the trial by both parties; but under the view taken by the Court of those above stated, it became unnecessary to examine them. The foregoing statement embraces all the facts, and the several points reviewed by the Court, in the determination of the cause.

*O. M. Barnes* and *A. Blair*, for plaintiff.

1. The statute of 1838 has not altered the common law rule. A deed merely signed, sealed and delivered is good *inter partes* without acknowledgment and record. (*R. S.*, 1838, 257, sec. 1; 12 *J. R.*, 73.) Proof of the deeds by subscribing witnesses was, therefore, proper. (1 *Greenl. Ev.*, § 569; 20 *J. R.*, 479, 480; 4 *Ib.*, 161; 9 *Cow.*, 140; *Blackwell on T.*, 438.)

2. Proof that subscribing witnesses resided in New York was sufficient to admit proof of their signatures. (1 *Greenl.*

*Ev.*, § 572, *note* 4; 9 *Cow.*, 140; 8 *Pick.*, 142; 4 *J. R.*, 461; 5 *Mass.*, 452.)

The statute making the tax deed *prima facie* evidence of regularity of the proceedings to the date of the deed, raises a new *presumption of fact*, and is the least conclusive kind of evidence, depending for its force on the whole case (1 *Greenl. Ev.*, § 44, 45; 1 *Stark. Ev.*, *p.* 544). It may, therefore, be rebutted by facts and circumstances, short of positive proof. The statute requires the making and deposit in certain offices of certain rolls, records and papers, in the course of the levy and collection of taxes, which provision. is necessary for the information and security of the tax payer. When it appears that the records and papers on which the tax is based, are not in the offices where required to be kept, the presumption in favor of the deed is fully rebutted, and the *onus probandi* thrown back on the claimant. (2 *Mich. R.*, 479; 1 *Greenl. Ev.*, 78; 11 *Ill.*, 441; *Ib.*, 453; *Ib.*, 462; *Blackwell T. T.*, 53.) When the statute requires the making of records and papers, and lodging or recording them in an office, such lodgment and recording are indispen. sable. (1 *Pick.*, 484; 14 *Mass.*, 177, 178; 25 *Verm.*, 423; *Blackwell T. T.*, 144; 2 *Mich. R.*, 499; 21 *Pick.*, 64; 3 *Seld.*, 517.)

Defendants can rely on the tax deed for 1839 only, because that they cannot rely on cumulative titles. To allow them to do so is contrary to reason, and also the spirit of the tax law. The defendants, or those through whom they claim, were bound to pay all taxes subsequent to that deed, because, 1. The law declares the tax title holder. to be *prima facie* the owner, and as a necessary consequence, he is bound to pay taxes on the land. Besides, the defendants, or those under whom they claim, were in possession, both constructively and actually, before the land was sold for the taxes of 1842 and subsequent years. (*Blackwell T. T.*, 470; 11 *Ill.*, 322; 6

*Ohio R.*, 93 ; 10 *Ib.*, 152 ; 14 *Ill.*, 456 ; 12 *Ill.*, 442 ; 13 *Ib.*, 708 ; 13 *How.*, 18 ; 2 *Watts*, 495.)

As to the deed founded on the tax of 1844 and after years, the party was in actual possession, claiming to own even before the lands were assessed. The law relative to tax proceedings is to be strictly construed. (*Blackwell on T. T.*, 81, 82, 83, 86 *and* 294 ; 2 *Mich. R.*, 498, 499 ; 3 *Conn.*, 401.)

· The deed founded on the tax of 1839 is void, for the following reasons : 1. The assessment roll of the township for that year was not signed by the Assessor. (*R. S.*, 1838, *p.* 82, § 11 ; *Sibley* vs. *Smith*, 2 *Mich.*, 490.) 2. The assessment rolls were never equalized by the County Commissioners, and this was necessary. (*R. S.*, 1838, *p.* 82, § 14 ; 2 *Mich. R.*, 502.) 3. The township tax for 1839, and for which the land was sold, was entirely unauthorized, no such tax having been voted or raised, and a part of the tax, being void the sale and deed is void. (5 *Phil. Ev.*, *Cow. and Hill's note*, 188 ; *Blackwell*, 192 ; 13 *Mass.*, 272 ; 15 *Ib.*, 144 ; 5 *Conn.*, 190 ; 3 *Cush.*, 569.) The journal of the County Commissioners is not duly authenticated, having no presiding officer's signature. (*Blackwell*, 408, 410.)

The deed founded on the tax of 1842, besides being cumulative, is void for the following reasons : 1. The sale did not take place on the day fixed by law, and no reason therefor appears. (*Blackwell*, 314, 319, 320 *and* 321 ; 10 *Ohio R.*, 139 ; 15 *Ib.*, 130 ; 14 *U. S. Dig.*, 541, § 79.) 2. The assessment roll is not signed, or in any way authenticated. It is, therefore, incomplete, and the tax void. (2 *Mich.*, 490 *to* 503 ; *Blackwell*, 412, 138, 257 ; 15 *Maine R.*, 227 ; 3 *Greenl. R.*, 227 ; 20 *Maine R.*, 199.) The certificate and roll are distinct instruments, and so regarded in the statute. Authentication of the certificate is not authentication of the roll. (*Sess. L.*, 1843, *p.* 67, § 19 ; *Sess. L.*, 1842, 87, § 8 ; *Blackwell*, 140.) 3. There was no equalization of the assessment rolls by the board, or apportionment of the taxes by them entered at

large on the journal. (*Sess. L.*, 1842, *p.* 88, § 11; *Blackwell*, 366.)  4. The record of the board is defective, in not showing who constituted it, or that a quorum was present, and is not signed or authenticated by the clerk or presiding officer of the board. (*Blackwell*, 410, 411, 412, 408.)  5. The amount for which the land was sold was excessive, ten per cent. being added to the amount assessed to the land.

As to the tax of 1844: 1. The party was in possession of the land when it was assessed. The land should have been assessed to him, and he was bound to pay the tax. (*Laws*, 1843, 65, § 12; *Blackwell*, 470; 10 *Ohio R.*, 152; 12 *Ill.*, 442; 14 *Ib.*, 456.) If not assessed in the occupant's name, the assessment was illegal for that reason. (*Sess. L.*, 1843, 65, § 12; *Blackwell*, 173, 174.)  2. The roll is not signed by the Assessors.  3. The record of the Board of Supervisors for this session is void for want of due authentication.  4. The township tax of $90.64 was wholly unauthorized, none having been voted by the electors, or even the Town Board. (3 *Cush.*, 569.)

*E. W. Morgan*, for defendants.

The certificate to the copy of the patent from the United States to Peabody, does not show the copy to have been compared with the original, and to be a correct transcript from and of the whole of such original, as required by Sections 75 and 71, page 458, of the Revised Statutes of 1846.

The deed from Peabody to the next grantee in the plaintiff's claim of title, with the certificate thereto, was not entitled to record. It was recorded February, 1842. (*See Sess. L.* 1839, *p.* 219, *Sec.* 13.) If it be contended that the deed being executed in 1836, should be governed by the law then in force in Michigan (*Laws* 1833, *p.* 281, *Sec.* 7), then it would be necessary to show it executed according to the laws of New York, which was not done.

The statement in the case that the assessment roll was not signed, was an inference merely from the want of a signature to a copy of the roll made by the County Clerk. Upon a new trial the signing of the original may be shown.

The omission to enter upon the Record of the Board of Supervisors the equalization of the assessment rolls, does not vitiate the tax.

Section 70, page 101, of the Session Laws of 1842, repeals the provision of the Revised Statutes of 1838, requiring assessment rolls to be signed.

The objection to the Record of the Board of Supervisors, is suicidal. In introducing it, the plaintiff proves it to be, or at least calls it the Record of the Board of Supervisors, and thus all objections founded upon it fall, without prejudicing the defendants' tax title for 1842.

As to the construction of the statute making the deed *prima facie* evidence of the regularity of the proceedings: if showing enough to raise a doubt, or even enough to make the probabilities equal, and do away with any preponderance in favor of the proceedings, is sufficient to change back the *onus probandi,* then the statute is delusive. The reason and spirit of this statute as applied to tax proceedings, makes the presumption in favor of their regularity stronger than ordinary presumptions of law arising from the absence of testimony on the subject.

To the objection that the land was sold October 11, 1844, it is answered that Section 61, page 79, of the Laws of 1843, requires that " the County Treasurer shall commence the sale," etc., " and continue the same from day to day," etc. ; and Section 76, page 83, makes the same apply to taxes of 1841 and 1842. Page 81 of the Laws of 1851, is to the same effect.

Upon the question of cumulative titles : if, as the plaintiff claims in the language of the Court, in Sibley *vs.* Smith (2 *Mich.*, 504), the assessment roll is *void,* and the subsequent proceedings void also, then there could be no obligation upon

Raynor or those claiming under him, to pay the taxes for the plaintiff, or prevent its being assessed, as the plaintiff's land should be assessed. But if it were otherwise, the plaintiff ought not to be allowed to take advantage of his own habitual delinquency, and get back his land freed from taxes, and without paying any share of the public burdens. If the defendants were in the occupancy of the land under the tax title of 1839, which was void because the assessment roll was not signed, they were as to the owner of the land mere trespassers, liable as such for damage done to the land, and for mesne profits, with no right in any suit to any deduction on account of taxes paid.

The reasoning in relation to the deed for the tax of 1846, will much of it apply still more strongly to the objections to cumulative titles. Each deed, if regular, makes a full and perfect title by itself, and obviates the objection made in other cases, that deriving the same title from different sources, or from the same source at different times, is inconsistent and contradictory. The very nature of tax titles makes the title under each year's tax as good against a conflicting tax title for previous years as it is against the original owner. See several authorities in Blackwell on Tax Titles, page 470 to 473, to this point. "One in possession of a tract of land at the date of the assessment, may purchase at the sale, unless it appears that he was bound to pay the taxes, in which event he can acquire no title by his purchase." The first case cited in support of this point, is Blakeley *vs.* Bestor (13 *Ill.*, 708). From the reasoning in the case, it would not seem that the fact of possession had any bearing upon the question of jurisdiction or regularity, but was one of equity between the parties. The case of Bronson *vs.* Yaney (1 *Dev. Eq. R.*, 77), shows that where the tax title is held void, it is in cases where it is the duty of the tax purchaser towards those disputing the tax title to pay the tax; but when there is no such duty

between the parties, the fact of possession does not prejudice the title.

By the Court, MARTIN, J.

The plaintiff's evidence of title was properly admitted. In case of loss of an original patent, a copy from the records of the General Land Office of the United States, certified by the Commissioner, under the seal of the office to be a true and literal exemplification of the Patent Records, as in this case, is admissible without further proof. The provisions of Chapter 102 of our Revised Statutes, respecting evidence, have no relation to such cases, as they are governed by the laws of the United States, and the practice of the different departments.

The deeds subsequently offered, and through which the plaintiff deduces his title, were properly executed so as to entitle them to record. This was expressly adjudged by this Court in Ives *vs.* Kimball (1 *Mich. R.*, 308), when the validity of a record of a deed, executed under the law of 1827 (the same under which the deeds in question were executed), was under consideration, and the record was admitted to be read in evidence. The records being admissible, the originals were also, without preliminary proof. Such proof was, however, made in this case, by proving the handwriting of the subscribing witnesses, and of the grantors, after showing that they were non-residents of this State at the time of their execution, and this was *prima facie* sufficient.

To maintain the defence, certain deeds, executed by the Auditor General upon sales of the lands in question for delinquent taxes, were offered in evidence. To the admission of these deeds, numerous objections are made. The first deed in order of time was to Luther C. Smith, dated in January, 1844, for the taxes of 1839. To the reading of this deed, as well as to its validity, several objections were made, but as the Court below found that the assessment roll, upon

which the tax was based, was not signed by the Assessors, and as this is a fatal error under the ruling in Sibley *vs.* Smith (2 *Mich.*, 486), we do not regard it necessary to consider them further, and especially, as every material objection to its validity is raised in the objection to the subsequent deeds.

Under this deed, it appears that Smith entered into possession of the premises in question in March, 1844, made some improvements thereon, and conveyed the same to John Raynor by deed, May 10, 1844; and that at the time of such conveyance, Smith surrendered the possession to Raynor, and that the defendants have since held possession under him. Subsequent to this conveyance from Smith to Raynor, it appears that Raynor bid in this land for the taxes of 1842, at a sale made in October, 1844, and received his deed, therefore, in 1847. This deed was offered in evidence, and several objections made thereto by the plaintiff. Among other grounds of objection, it is insisted that it conveyed no title, as Raynor was in possession under color of title taken under the deed of January, 1844, and was bound to pay all taxes which were a lien upon the land at the time of taking such possession, as well as all burdens which might subsequently accrue. At the time of the entry by Smith, the tax of 1842 was a lien upon the land, and it so remained until after the purchase by Raynor. By entering into the possession, Raynor acquired an absolute title as against Smith, and as against all the world except the present plaintiff; and whether as against him, would depend upon the validity of Smith's title, and this, as he entered under it, he is estopped from questioning. Were he to deny the validity of the title of Smith, he would admit himself to be a trespasser upon the plaintiff; and while such, he could acquire no title adverse to the plaintiff by discharging any burden which the State imposes upon the land, or upon the owner, in virtue of its pre-eminent sovereignty, for this would permit him

to take advantage of his own wrong; and, if his possession is adverse to the plaintiff, and under color of title, every act of his which is in obedience to a law imposing such burden upon the land, must be regarded as done by him, by reason of his own claim of title, and in protection thereof; and he cannot thereby acquire a new or superior title, as every such act is deemed to be subordinate to his own title, and cannot be adverse to it. Thus, in Douglass *vs.* Dangerfield (10 *Ohio*, 152), it was held, that one in possession of lands claiming title, and in whose name it is listed for taxation, acquires no additional interest by suffering the land to be sold for taxes, and purchasing the same himself. The same doctrine is held in Ballance *vs.* Forsyth (13 *Howard's U. S. R.* 18); Chambers *vs.* Wilson (2 *Watt's R.*, 495); Veris *vs.* Thomas (12 *Ill.*, 442), and Glancey *vs.* Elliott (14 *Ib.*, 456). It is also recognized in Blakely *vs.* Bestor (13 *Ill. R.*, 708), where it was held, that upon proof of the mere fact of possession, by the defendant, at the time of the assessment and sale, the Court would not presume him bound to pay the taxes, because, says the Court: "He may occupy them as a tenant, under an agreement that his landlord shall pay the taxes, and in such case there could be no obligation on the tenant to pay them, particularly if, in pursuance of the agreement, they were listed for taxation in the landlord's name." But, upon the introduction of the tax deed by the defendant, "It would be competent," the Court says, "for the plaintiff to avoid it by proving that the defendant occupied a position while it was maturing which made it his duty to have paid the taxes, and which forbid his taking advantage of a title acquired through his default." So a purchaser, at a tax sale of lands in which he has an interest as heir, acquires no additional title. See Cholean *vs.* Jones (11 *Ill.*, 300); Platt *vs.* St. Clair's heirs (6 *Ohio*, 93). In Douglass *vs.* Dangerfield, and in some of the other cases above cited, the land appears to have been listed for taxation

in the name of the occupant claiming title, but we appre-
hend that no material difference exists between such a case
and one in which it was listed or assessed as "non-resident,"
or to a person having no title, or claim of title.   The listing
is based upon the fact of possession under a claim of title,
and it is the possession which creates the disability in the
purchaser.   Were the Assessor to omit, for any reason, to
assess the land against such possessor, or to assess it to a
wrong person, we are at a loss to perceive upon what princi-
ple such possessor, any more than the owner under any
other title, would, by that omission, acquire any additional,
or new interest, by suffering the land to be sold for taxes,
and bidding it in himself.   The principle upon which these
decisions rest, grows out of the nature of the proceedings
under which the sales for taxes are made.   The State, for the
support of Government, in the exercise of its *eminent domain*,
imposes the burden of taxation upon all persons and prop-
erty within its limits.   If such taxes are not paid, and real
estate be the subject of taxation, it condemns the land for
the default, and this condemnation is wrought out by its
sale.   The title acquired by such sale has nothing to do with
the previous chain of title, nor does it in any manner con-
nect itself with it.   It is a breaking up, of all titles, and
operates, not to support, but to destroy them.     See 20
*Ohio*, 556.

It would, therefore, involve an absurdity to say that a sub-
sequent title acquired at a tax sale, and which breaks up and
destroys all prior titles, operates at the same time to strengthen
such prior title.    Nor does the fact that the tax title of 1842
was a *lien* upon the land, at the time possession was taken by
Smith, enable the defendants to avail themselves of the sale
for that tax. · The land was purchased for the tax of 1839,
with this burden upon it, and by entering into possession
under that sale, Smith, and afterwards Raynor, was bound, in
virtue of such possession, to discharge the lien for the protec-

tion of the title under which he occupied. By a voluntary payment he would not strengthen his title, and by suffering the land to be condemned and sold to discharge such lien, he could, as we have seen, neither strengthen it, nor acquire a new one. The law neither puts, nor does it intend to put the possessor of lands claiming under a tax title in any better condition than that of a possessor under any other title ; and it is only by the purchasing in of those adverse or outstanding, that the latter can strengthen his original title, and this can never be done by removing liens or incumbrances which are founded only upon duty, or in contract. Possession is voluntary, and when the purchaser has such confidence in the validity of his title that he is willing to enter upon and enjoy the possession and pernancy of the profits, then, if not before, the obligation to discharge the burdens which the law has imposed upon the property for the support of Government attaches to him, and whether those burdens already exist as liens, or are thereafter created, his duty is the same. This is an obligation incident to every title and to every possession under color of title. A party, therefore, who enters upon the possession of land under one, or a series of tax titles, should see to it that he has such a title as will warrant him in incurring the liabilities incident to that possession. In imposing this rule, the law only applies in his case the obligation which is incumbent upon every other purchaser of land, to take care that he has a good title if he would derive benefit from it, or enjoyment under it.

Having arrived at this conclusion, we should deem it a duty, under ordinary circumstances, to pass by the objections stated to the assessment and tax for the years of 1842 and 1844. But as many of the questions are of great practical importance, and of frequent recurrence at the circuit, we do not feel at liberty so to do. And first, it is objected to the deed for the tax of 1842, that the sale did not take place on the day fixed by law, and no reason therefore appears. It

appears that the land was sold on the 11th day of October, 1844. By the Act of 1843, which governed this sale, it was to commence on the first Monday in October, and to be continued from day to day until so much of each parcel charged with taxes should be sold as should be sufficient to pay the taxes, interest, and charges. (*See Sess. L. of* 1843, *pp.* 79 and 88, §§ 61 and 76.) No evidence appears of this fact, except the recital in the Auditor General's deed. Under the ruling of this Court, in Sibley *vs.* Smith, this would not be evidence sufficient to invalidate the sale, nor shift the burden of proof upon the defendants. For aught that appears, the return of the County Treasurer to the Auditor General may have shown a compliance with the statute, and it was for the plaintiff to show that it did not.

There is nothing in the second objection, as the finding of the Court below shows a sufficient compliance with the law, and record of the township vote.

It is thirdly objected, that the assessment roll was not signed. It appears, however, that the certificate of the Assessors required by the law of 1842, was attached and signed. The law of 1842, page 85, unlike the Revised Statutes of 1838, does not require such signature to the roll, and in this respect this case is distinguishable from that of Sibley *vs.* Smith, and the adjudications in other States, to which we are referred in the plaintiff's brief. We do not, therefore, regard the want of signature as an objection, the certificate being the only authentication of the roll required by law.

It is fourthly objected, that there was no equalization of the assessment rolls by the Board of Supervisors, or apportionment of taxes by them, entered at large upon the journal of the board.

The ninth section of the act of 1842 requires an equalization of the rolls to be made at the July session in each year, whenever the board shall deem the relative valuation of the real estate in the respective townships to be disproportionate,

and the presumption of law, in the absence of a record of equalization, is that none was made, because no cause was found to exist requiring it.

The apportionment of taxes is required by the Act (Section 14) to be made and entered upon the journal of the board at its September session ; and as the records of that session were not produced by the plaintiff, nor any evidence offered respecting them, we can infer nothing against the validity of the tax under this objection; nor was the burden of showing the entry to have been made cast upon the defendants, by the proof offered.

The same remarks are applicable to the fifth objection. The proceedings of the board at its July session, however irregular, will not warrant any presumption respecting their proceedings at the September session, or change in any degree the burden of proof.

It is sixthly objected, that the record of the July session is defective and void, in not showing who constituted the board, or that a quorum was present, and for want of signature or authentication by the clerk or presiding officer of the board. So much of the record as is exhibited in the case, shows that the Board of Supervisors met on the 29th of July, and proceeded to business. The inference is that all the Supervisors of the county were present, or at least a quorum. If the contrary was the fact, it should have been affirmatively shown. Nor do we regard the signature of the President or clerk necessary to the validity of the record. The law requires one to be kept, but does not require it to be signed by any one. While it is proper and desirable that these records should be signed, yet we do not regard the omission as a fatal error, but at most, only an irregularity. If, as we must presume, the plaintiff found the records in the proper place of their custody, his production of them estops his denying them to be the records of the board. He can hardly be permitted to base his objections upon the records, and still deny

such records. Even the want of a signature of the Presiding Judge to the journal of a Court, although required by law, does not vitiate the record (*see Bartlett* vs. *Lacy*, 2 *Ala.* 161), if sufficient in other respects, and in case of the records and journals of public bodies, the only prerequisite to their admissibility as evidence, is that they be produced from the proper place of custody, and shown to have been kept by the proper officer.

The seventh objection is, that the amount for which the land was sold was excessive, and the sale was, therefore, void. The tax was $13.82. By the requirements of law *ten per cent.* was to be added to *all* taxes remaining unpaid on the first of February. This addition of *ten per cent.* is objected to as excessive ; but as it was imposed by virtue of the statute, we perceive no force in the objection..

Most of the objections to the tax of the year 1844 are the same as those made to that of 1842, and have been already considered. Two objections, however, remain as to this tax.

*First:* It is objected that the records of the Board of Supervisors show the equalization of the assessed property to be irregular, inasmuch as it includes the real and personal property together ; but the case does not show sufficient to enable us to determine the question raised by it.

The only other objection which we propose to consider is, that the township tax of $90.64 was wholly unauthorized, none having been voted by the electors, or by the Town Board. The authority to levy a township tax is based upon the previous action of the township—either the electors, or the Town Board, as the case may be—and the Supervisor cannot levy a tax at his discretion. In this case the Court below finds a total absence of such authority, and that portion of the tax is therefore void. This doctrine of excess of taxes has been frequently before the Courts, and is surrounded by many difficulties. There is no principle, however, upon which this excess can be sustained. In

personal actions against the Collector and others for collecting, or attempting to collect such tax, Courts have held that when the tax was divisible, and the excess could be ascertained, such excess might be rejected, and the balance of the tax held good; but that principle has no application to cases of ejectment, where the validity of the title depends upon the validity of the tax and subsequent proceedings, and where, from the very nature of things, there can be no separation of the good from the bad. It is only applicable in personal actions or in direct proceedings to collect the tax, and does not operate upon property acquired upon tax sale. (*See the numerous cases cited in the notes to Ch. VI., of Blackwell on Tax Titles, p.* 184, *et seq.*)

In testing the validity of tax titles, we are too apt to lose sight of the fact, that by making the deed *prima facie* evidence of the regularity of all proceedings to its date, our law has shifted the burden of proof from the holder of the title to the adverse party. The holder of the title, instead of being compelled to establish the regularity of all proceedings upon which his title is based, may repose upon his deed until the opposite party introduces such evidence as, in the absence of all counter testimony, will afford reasonable ground for presuming the proceedings anterior to the deed to be irregular and insufficient to sustain the title. When this is shown the burden of proof is thrown upon the holder of the title, and the common law rule so far restored. (*See Sibley* vs. *Smith, above cited.*)

The great difficulty is to determine when that burden is shifted, and this must in a great degree depend upon the circumstances of individual cases. In the present case we have considered and determined the objections raised, upon the principle that the evidence sufficient to change the burden of proof must be such as to exclude any reasonable presumption of regularity — in other words, that the evidence of irregularity must be such as to require explanation, or

counter proof, and must be of matters which are peremptory and not directory, and that it is not sufficient to cast a general doubt over the title, but that it is necessary to point out some specific defect, or raise a reasonable presumption against the sufficiency of some particular act, or of the non-performance of some necessary duty. It is in this way only that we can secure to the statute a rational interpretation and reasonable effect.

Certified accordingly.

Present, all the Judges.