## PERKINS *v.* TOWNSHIP OF DELAWARE.

| | |
|---|---|
| 113 | 377 |
| 120 | 328 |
| 113 | 377 |
| 125 | 485 |
| 113 | 377 |
| 142 | ²337 |
| 142 | ²339 |

1. BRIDGES—PLAN OF CONSTRUCTION—NEGLIGENCE.
    A township is not negligent in constructing a bridge 20 feet long with one end a foot higher than the other, to conform to the formation of the adjacent land.

2. SAME.
    The construction of a bridge 16 feet wide, 1 inch lower on one side than on the other, is not negligence.

3. SAME—EVIDENCE.
    In an action against a township for damages alleged to have been sustained by reason of its negligence in permitting the supports of a bridge to become rotten, so that one side was lower than the other, the testimony of the highway commissioner that an actual measurement showed an incline of one inch, if unimpeached, must prevail as against the testimony of witnesses who confessedly rely upon estimates in placing the incline at several inches.

4. SAME—SIDE RAILINGS—WHEN REQUIRED—QUESTION FOR JURY.
    Whether the failure to maintain side railings on a bridge 20 feet long and 16 feet wide, one end of which was 1 foot

lower and one side 1 inch lower than the other, constituted negligence, is a question for the jury.

5. SAME—CONTRIBUTORY NEGLIGENCE.

Whether the owner of a horse, in permitting it to be driven unshod when the roads were slippery because of recent rains, was guilty of contributory negligence, precluding a recovery for damages resulting from its inability to keep its footing upon an inclined highway and bridge, which was unprotected by barriers, was a question for the jury, as was also the question of the negligence of the driver in not alighting before attempting to drive up the incline.

Error to Sanilac; Beach, J. Submitted April 30, 1897. Decided June 7, 1897.

Case by Henry P. Perkins against the township of Delaware for damages alleged to have been sustained by reason of a defective bridge. From a judgment for plaintiff, defendant brings error. Reversed.

The negligence charged in this case is the construction of a bridge across a ravine, with the north end thereof 1 foot lower than the south end, thus creating an incline of about 1 foot in 20; in permitting the supports to the bridge to become rotten, so that the east side was lower than the west side; and in failing to provide railings for the sides. The declaration alleges that, "while said horse and buggy were on said bridge, said horse, by reason of said incline as aforesaid, unavoidably slipped, and in his struggles to recover himself, and without fault of the driver, backed off and over the bridge on the east side into the ravine, a distance of 10 feet." The horse was killed, and the buggy injured. Plaintiff recovered verdict and judgment.

*William H. Burgess* and *H. O. Babcock*, for appellant.

*John F. Murphy* (*W. T. Bope*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). The defendant requested the court to direct a verdict for it. The case

was left to the jury upon the theory that there was evidence to sustain the three grounds of negligence alleged. There was a steep hill at the south end of the bridge, and that end was constructed higher than the other, to conform to the formation of the land. There was no negligence in this method of construction, and the court should have eliminated it from the consideration of the jury.

Plaintiff's son, 14 years of age, was driving. His mother was riding with him. The evidence on the part of the plaintiff that the bridge sagged on the east side is as follows: Plaintiff's son testified that the bridge at the northeast corner "sagged down a little;" another witness, that he observed that the east side was eight inches lower than the west side; another estimated that it was from four to six inches lower. Several witnesses on the part of the defendant testified that they could not observe any sag, and that there was no depression which could be observed with the eye. The highway commissioner made a measurement, and testified that at the north end there was an incline to the east of one inch. There is nothing in the record to impeach this actual measurement, and it must stand as true. The practice of permitting juries to base their verdicts upon guesses or estimates of distances or conditions which are susceptible of actual measurement is to be condemned. It is the duty of the plaintiff who seeks to recover damages for negligence to place before the jury the actual conditions when it is within his power to do so. The construction of a bridge 16 feet wide, 1 inch lower upon one side than upon the other, is not negligence. This charge of negligence should have been eliminated from the consideration of the jury.

Only the charge as to railings remains. Under the decisions of this court, it was a question for the jury to determine whether the failure to maintain railings was negligence. *Shaw* v. *Township of Saline, ante,* 342, and authorities there cited.

It is difficult to ascertain from the testimony precisely

how the accident occurred. Mrs. Perkins testified that the horse slipped about in the middle of the bridge; that her son struck the horse with the whip, "but he still slipped, and the heft of the buggy dragged him over the bridge." She further testified that the boy jumped before the horse and buggy went over, and that the hind part of the rig went over first. On cross-examination she testified that when the boy struck the horse "he started ahead quick, tried to get his feet, and got ahead, but we were too close, and we went over." The son testified, "When we got on the bridge, and got about to the center, the horse started to slip, and I hit him with the whip, and he slipped more and more, and the bridge was on an incline, and the buggy pulled the horse over the bridge." He also testified that when he hit the horse the second time "his front feet were off the bridge, going up the hill; his hind feet were yet on the bridge; then he slipped, and went to one side." Another witness for the plaintiff testified that he saw where the horse slipped in the middle of the bridge, and where he tried to walk up the hill, probably four or five feet from the bridge. It had been raining the night before, and plaintiff's horse was unshod. There were several steep hills in the road, the soil of which was clay. They had been made slippery by the rain. The hill which they had passed a short distance before coming to the hill and bridge where the accident occurred was so slippery that the horse could not pull the load up, and Mrs. Perkins got out and walked. One Joseph Mabie, a witness for the plaintiff, testified that the hill was so slippery he did not consider it safe to ride up in his buggy, and that he got out and walked up. Plaintiff himself testified: "I knew these hills were there, and if I had stopped to think I would have known that they would be slippery a morning like that. But I didn't think anything about it." There was some clay upon the bridge according to several of the witnesses, evidently washed upon it from the hill by the rain, or carried on by horses and carriages. For this condition of the

road the defendant is not responsible. *Rolf* v. *City of Greenville*, 102 Mich. 544. We think that it was a question for the jury to determine whether the plaintiff was guilty of contributory negligence in permitting his unshod horse to be driven over the road, and whether the driver was negligent in attempting to drive over the bridge and up the hill with the occupants in the buggy.

Reversed, and new trial ordered.

The other Justices concurred.