## KARRER *v*. CITY OF DETROIT.

1. HIGHWAYS AND STREETS—INJURIES TO TRAVELERS—BARRIERS AND SIGNALS—QUESTION FOR JURY.

   Where, in an action for injuries caused by running an automobile into an unguarded excavation in the street, there is testimony to support plaintiff's theory that the red lights were back of the line of the curb and the barriers were so placed as not to be readily visible from the direction from which plaintiff was driving, the question is properly left to the jury.

2. SAME—NECESSITY OF BARRIERS.

   A city is not required to so barricade a street as to preclude injury, but it is sufficient if it give plain warning of the danger, as by the use of a red light, and the necessity of caution and investigation of the danger.

3. SAME—TRIAL—INSTRUCTIONS.

   Where, in an action for injuries caused by running an automobile into an excavation in a street, plaintiff's theory is that the lights and barriers were insufficient to warn him of the danger, and that he was not negligent in approaching it at the speed at which he was traveling, an instruction correctly stating the rule applicable where one is suddenly confronted with danger is applicable to plaintiff's theory and is properly given.

4. SAME—INSTRUCTIONS ASSUMING FACTS.

   An instruction assuming that the lights were back of the line of the curb, when the weight of the testimony is that they were not, is prejudicial, the issue being whether a street excavation was properly guarded.

5. SAME—INSTRUCTIONS—PERSONAL KNOWLEDGE OF JURORS.

   An instruction which allows the personal knowledge of the jurors to have the effect of evidence in the case, with respect to the use made of a boulevard by the public, and the character of the ordinances relating thereto, is improper.

6. SAME—STREET-RAILROAD TRACKS—DUTY OF TRAVELERS.

   The rule that persons who attempt to cross street-car tracks whereon electric cars are operated must, before crossing, "stop, look, and listen," has no application to an action by a traveler against a city for injuries received by running into an unguarded excavation in the street, which, though near a railway track, had no relation to it.

Error to Wayne; Hosmer, J. Submitted October 4, 1905. (Docket No. 3.) Decided December 22, 1905.

Case by Edmund L. Karrer against the city of Detroit for personal injuries. There was judgment for plaintiff; and defendant brings error. Reversed.

*P. J. M. Hally (Timothy E. Tarsney, of counsel), for appellant.*

*Dohany & Dohany, for appellee.*

Hooker, J. The defendant has appealed this cause. East Grand boulevard, in the city of Detroit, is 150 feet wide. South of Mack avenue, which it crosses, the roadway was 50 feet wide. North of Mack avenue the boulevard has two driveways, each 30 feet wide (the east one being closed), with a park between, with an arc light on a pole at the south end of the park, which was burning at the time of the accident which caused the injury of which the plaintiff complains. The westerly driveway only was in use. There are two street-car tracks upon Mack avenue, occupying a strip 14 feet in width of that street. Mack avenue was being repaired, and had been plowed up north of the tracks, across the south end of the northerly portion of the boulevard. The situation will be understood by an examination of the annexed diagram. The excavation is shown by the crooked line north of the tracks, and there was a passageway left for travel between the west curb and the point marked " B."

The plaintiff drove his automobile from the south, and, when 300 or 400 feet from Mack avenue, discovered a red light at or near the point marked " B." He was driving on the east side of the boulevard, and supposed that the lamp was at the west curb. The plaintiff testified that he observed the lamps after the accident, and that there were two west of the pathway, along the west line of the boulevard. He concluded that the light was intended to show danger at that side of the driveway, and put on the power

which he had taken off on discovering the light, and proceeded on his way at a speed 8 or 10 miles per hour, keeping to the right of the light.   He discovered the trench just before reaching the street-car track, but was going too fast to stop his car, which went into the excavation, and was injured.   Plaintiff also received some injury to his person.   The evidence of several witnesses was taken

as to the width of the passageway west of the excavation and the location of the lights, and it is a disputed question of fact whether they were west of the passageway at the curb or east of it.   There was also testimony of witnesses who estimated the width of the passageway at 7 or 8 feet. One, who said he measured it, testified that it was 14 feet wide.   Plaintiff testified that the street was barricaded north of the excavation, but that he could not see it as he approached from the south.

The court left it to the jury to determine whether the measures taken by the contractors were a sufficient warning to the traveling public, and also whether plaintiff exercised common prudence, after seeing the light, in acting upon the assumption that it was intended to mark danger near the west curb only, and that it would be safe to travel on the east side ( without having his car so under control as to stop it at once if it should be necessary ) at the point where plaintiff was injured, marked "A" on the diagram.

Upon the theory that the red lights were at the curb line only, and that the barricade was put so far back to the north as to be not readily visible from the south, of which there is testimony, we are of the opinion that the court did not err in leaving the question to the jury. A city is not required to so barricade a street as to preclude injury. It is its duty to give a plain warning that there is danger, and this is ordinarily done by displaying a red lamp, which is the generally accepted symbol of danger, and the necessity of caution and investigation of the danger. Had this lamp been in or near the center of the street, it is at least doubtful if one approaching the crossing, without having the car under such control as to be able to stop it within the distance at which he could readily discern danger, would not be guilty of contributory negligence, and, if blinded by the electric arc in front of him, or if the ground ahead of him was in a shadow, such duty of absolute control would be emphasized. *Smith* v. *City of Jackson,* 106 Mich. 136; *Church* v. *Village of Howard City,* 111 Mich. 298; *Tuttle* v. *Town of Clear Lake* ( Iowa), 102 N. W. 136. We are of the opinion that there was no error in such testimony as was given concerning the condition of the pavement the next morning.

Evidence was permitted that on the evening in question two other automobiles went into the same trench at that place. The court refused to strike out this testimony, and afterwards charged the jury that:

" I am asked to charge you, and I do charge you, that

there is undisputed testimony here that on the evening of July 10, 1903, between the hours of 7:30 and 10 p. m., before the plaintiff was injured, two other automobiles were run into the same excavation and broken, one so badly broken that it had to be wheeled into a neighboring yard; that this testimony is admitted for the purpose of showing the character and existence of the excavation on the boulevard into which the plaintiff ran, and not for the purpose of showing any reasonable care by the plaintiff, and should not be considered as bearing upon the question of reasonable care upon his part."

The testimony given seems to have the sanction of authority within certain limits. See *Smith* v. *Township of Sherwood*, 62 Mich. 165; *Dundas* v. *City of Lansing*, 75 Mich. 508 (5 L. R. A. 143); *Lombar* v. *Village of East Tawas*, 86 Mich. 20; *Thompson* v. *Village of Quincy*, 83 Mich. 175 (10 L. R. A. 734); *Retan* v. *Railway Co.*, 94 Mich. 154; *Moore* v. *City of Kalamazoo*, 109 Mich. 178; *Alberts* v. *Village of Vernon*, 96 Mich. 549. But see, also, *Corcoran* v. *City of Detroit*, 95 Mich. 86, and *Gregory* v. *Railway*, 138 Mich. 368. As there are other points upon which the cause must be reversed, we do not pass upon the question of its admissibility here; the cases cited indicating the rule to be applied upon another trial.

The court charged the jury that:

"I am asked by the plaintiff to charge you that some testimony has been offered by the defendant by which it is attempted to show that the plaintiff might have stopped his automobile, or might have turned it to the right or left, before it went into the excavation. The plaintiff has told you what he did as soon as he discovered the excavation in front of him, and has told you the kind of automobile he was on at the time, and the year when it was made, and the distance in which it can be turned, the speed, going at the rate of 8 or 10 miles per hour. Upon this point I charge you that our Supreme Court has said that one suddenly put in danger is not required imperatively to do that which, after the peril is ended, it is seen might have been done, and escaped. The law makes allowance for the fright and lack of carefulness or judgment incident to the peril, and it would be absurd to re-

quire the plaintiff in this case, when he saw the excavation ahead of him, and was suddenly called upon to decide how he should escape, to exercise the same coolness and nerve that an uninterested bystander might manifest. There can be no question about that, gentlemen of the jury, but still he is bound to use that degree of diligence which the average prudent man would use on such an occasion as that, and, if he had a right to anticipate that there was any peril at that particular point, of course, gentlemen of the jury, he was bound, in approaching at a rate of speed which was inconsistent with a rate which would have been adopted by a reasonably prudent person."

It is contended that this was erroneous. It seems to us that, if the plaintiff was negligent, the negligence consisted in not heeding the warning given by the light, and bringing and keeping his machine under control ready for emergencies, rather than in not stopping it afterwards. Upon plaintiff's theory that he was not negligent in driving forward as he did, the instruction given was pertinent and applicable to defendant's claim of negligence in managing the car, after discovering the trench.

Complaint is made of the following charge:

" Now, I am asked to charge you, on behalf of the defendant, that, as a matter of law, a red light at night is a sign of danger, and it was the duty of plaintiff, Edmund L. Karrer, when he discovered the red light, to ascertain the reason of its being there. I think that is so. But if you find, gentlemen of the jury, that a reasonably prudent person, seeing the two lights as they existed, away to the side of the street, and saw no lights in the center, I cannot say to you, gentlemen of the jury, that he was negligent in assuming, under those circumstances, that the difficulty existed only on the side, but leave that expressly, gentlemen of the jury, for you to say what a reasonably prudent person under the circumstances would have done."

There is testimony that the lamps were at the curb, but there was quite as convincing testimony that they were estimated to be at least seven or eight feet from the curb, while, if the testimony of the only witness who measured the ground were to be taken, the lamps were within a foot

of the center of the street, if east of the driveway. See *Perkins* v. *Township of Delaware*, 113 Mich. 377, which holds that such testimony must usually prevail over estimates of distance. We are impressed that the jury would naturally infer that the trial judge believed that these lights were at the curb, or, at least, remote from the center of the street, and, though doubtless an inadvertence, was none the less injurious to the defendant.

The court also said to the jury:

" The plaintiff in this case desires me to say that the boulevard is used especially for fast riding and for the use of automobiles, and I think, gentlemen of the jury, you may take that in consideration, if your own experience satisfies you of that. I don't remember what the ordinance is relative to that particular part of the street, but doubtless some of you do, and you may have your own experience with reference to the using of the boulevard for that purpose; but I think the whole question, gentlemen, as to the degree of care, becomes a question for you rather than for the court."

This was in effect allowing the personal knowledge of the jurors to have the weight of evidence in the case. It contemplated not only their determination as to the use of the boulevard from their personal observation, but also the character of the ordinances relating thereto. This was erroneous.

We think it unnecessary to discuss the other points raised, further than to say that we think that defendant was not entitled to have its eighth request given. It was as follows:

" It is the law of the State of Michigan that those who attempt to cross street-car tracks whereon electric cars are operated must, before crossing, ' stop, look, and listen.' You have a right to take this into consideration in determining the degree of care exercised by the plaintiff in this case, and, if you find that he was not exercising that degree of care and caution which the law imposes upon the people crossing a street-car track, and because of his failure to exercise it he was injured, he is not entitled to recover, and your verdict should be for the defendant."

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and CARPENTER and MONTGOMERY, JJ., concurred with HOOKER, J.

GRANT, J. I concur in reversing this case for the reasons stated in my Brother HOOKER'S opinion. I am not satisfied, however, that this record shows negligence on the part of the defendant city, or due care on the part of the plaintiff in approaching this dangerous place. I find the record very unsatisfactory. It may be understood by the attorneys who tried the case and are familiar with the surroundings, but I find it very difficult to determine the requisite facts which to me are essential in determining the liability of the defendant and the care exercised by the plaintiff. It appears from the record that the witnesses made diagrams upon a blackboard, in the presence of the jury, locating the lamps that were placed along the excavation, and the piles of dirt thrown up, and the location of the passageway along on the north side of Mack avenue. No diagram has been furnished us. The evidence established the fact that there were five lamps placed along the excavation. It is claimed that some were so far east and west as to constitute no notice to the plaintiff, and not near enough to the line of the boulevard to attract his attention. Their precise location I am unable to determine. Plaintiff was riding on the east side of the boulevard as he approached Mack avenue. The boulevard south of Mack avenue and the east traveled track of the boulevard north of Mack avenue are nearly the same in width and open directly into each other. Plaintiff's automobile struck the excavation close to the east side of the west track of the boulevard and close to the park. He saw the red light, which he thought was near the curb on the west side of the boulevard, when between 300 and 450 feet from the north side of Mack avenue. It is common knowledge that it would be difficult for him, at that distance and in the direction which he was traveling, to determine the exact location of the lamp. He did not locate this lamp from

actual examination.  It might have been very near the center of the street, and yet appear to him, when such distance away, to be at the curb.  At some time he saw two lights, claiming that one was behind the other alongside the passageway.  It is established beyond controversy that there was a passageway wide enough for teams to travel upon between the west curb and the obstruction toward the center of the boulevard.  Some witnesses gave their judgment as to the width of this passageway or roadway.  One who actually measured it testified that it was 14 feet.  In such case the actual measurement must control.  *Perkins* v. *Township of Delaware,* 113 Mich. 377.

Plaintiff's witness Fox, who was riding with him in the front seat of the carriage, testified that his attention was called to a red light as he approached the intersection of Mack avenue and the boulevard when they were from 100 to 150 yards distant; that it was quite near the curb; that—

"There was a passageway between, but I could not say just what the distance was—6 or 7 feet, I suppose.  * * * Between the curb and where these red lights were there was some passageway there.  * * *  I noticed a red light over here to the right, down Mack a little way, I could not say how far away.  I did not pay strict enough attention.  * * *  Over to the left I noticed a pile of earth with the lights upon it.  The piles of earth upon which the lanterns were standing were possibly 3 or 4 feet high —may have been 5 feet high."

Plaintiff's witness Wobrock, who witnessed the accident and appears to have been very familiar with the situation, testified that the two lights were east of the passageway, which he thought was about 6 feet wide.  "They were on two piles of material that had been plowed up there from the excavation."

It is unnecessary to review the evidence on the part of the defense as to the location of the lamps, except to say that it was one of these witnesses who made the measurement of the width of the passageway.  From the evidence

on the part of the defense I am unable to obtain any definite understanding as to the location of the lamps. For these reasons I am not willing to pass upon the questions of the negligence of the defendant and of the plaintiff, which are both very important, until a more intelligible record is before me.

If one or more of the lamps were near the center of the street, the defendant had performed its full duty, and the lamp constituted a warning to all travelers that there was danger, and that they should approach the place with their vehicle under control. Plaintiff either slowed up or stopped when about 300 to 450 feet distant, and then went on with his usual speed. I am not prepared to hold that he was justified in assuming that the red light was located near the west curb, and was only a warning of danger close to that curb of this narrow roadway.