Homer **ARTHUR** and **Katherine Arthur,** his wife, Plaintiffs-Appellants,

v.

**CHRYSLER CORPORATION,** a foreign corporation, and Square Deal Cartage Company, a Michigan corporation, jointly and severally, Defendants-Appellees.

No. 21050.

United States Court of Appeals,
Sixth Circuit.

Aug. 11, 1971.

**430**

Charles J. Barr, Detroit, Mich., for Robb, Millender, Goodman & Bedrosian, plaintiffs-appellants; Goodman, Eden, Paul A. Rosen, Detroit, Mich., on brief.

John H. Dudley, Highland Park, Mich., and Lawrence A. Bohall, Detroit, Mich., for defendants-appellees; Ronald R. Pawlak, Southfield, Mich., on brief for Chrysler Corp.; Martin, Bohall, Joselyn, Halsey & Rowe, P. C., Lawrence A. Bohall, Detroit, Mich., on brief For Square Deal Cartage.

Before EDWARDS, CELEBREZZE and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

This is a products liability suit filed by plaintiffs-appellants Arthur under diversity jurisdiction in the United States District Court for the Eastern District of Michigan. It was dismissed by the District Judge as to both defendants at the close of plaintiffs' liability proofs.

At the time of the accident in 1965, plaintiff Homer Arthur was a driver for Gates City Transport Company. He had driven a highway tractor with a haulaway trailer carrying automobiles for Gates City for seven years. In 1965 Gates City had no direct contract with Chrysler for hauling its cars, but defendant Square Deal Cartage Company did. On occasion, such as this one, when Square Deal could not handle the volume of cars Chrysler assigned to it to haul, Square Deal would employ Gates City. The two haulaway companies used the same yard and the same dispatcher, but Gates City employed its own drivers and its own equipment.

Chrysler Corporation issued a booklet entitled "Drivers Manual for Loading and Transporting Chrysler Corporation Automobiles and Trucks." Arthur testified that he received and read a copy of this booklet in 1963. Although at one point he testified that he received the booklet from defendant Square Deal Cartage Company, in a number of instances thereafter he corrected his testimony by stating that he received it from his employer, Gates City.

The booklet Arthur testified he received contained the following instructions upon which Arthur relies in claiming that defendant Chrysler violated its

duty to warn him of dangers known to it:

"SPECIAL PRECAUTIONS
IN THE HANDLING OF VEHICLES

"Provisions of this part are of extreme importance in the handling of Chrysler Corporation vehicles. Deviations from these provisions will not be tolerated.

"1. All transmissions must be in neutral while vehicles are on any type of transport equipment. The PARK sprag (parking lever) on units equipped with automatic transmissions must not be engaged while the vehicle is on the transport equipment."

On the date in question plaintiff Arthur loaded five Chrysler cars (which had been assigned by Square Deal to his employer Gates City) and drove them to Saginaw, Michigan. He testified that he loaded all five in his regular manner, setting the foot brake firmly on each, chaining each down, and leaving the transmission in neutral. He testified that the load was inspected and passed by the Gates City inspector after he actually got in the car concerned. When he arrived in Saginaw at 3 A.M., he undertook to unload the cars. He unchained one car which was on an incline on the trailer and was attempting to get into the car when, in plaintiff's words, it "took off." It rolled backwards down the ramp and knocked plaintiff off the rig to the ground. The impact fractured both of plaintiff's heels.

Plaintiff claims that the accident was caused by a defective brake on the Chrysler car involved. The accident was never reported to Chrysler until nearly three years later, when this suit was filed. The car was never identified or examined. Plaintiff called no expert witness to testify as to his claims of brake malfunction.

In dismissing the complaint at the close of plaintiff's proofs, the District Judge said:

"THE COURT: There is no showing of a defect in this case. There's nothing for the jury to consider. It would merely have to speculate on what caused this thing. Well, nobody knows, so my ruling is that the motion for directed verdict will be granted as to each of the defendants."

█ As to defendant Square Deal Cartage, it is obvious that dismissal of the complaint was justified. Square Deal did not manufacture or service the automobile. There is no testimony that Square Deal even handled the car. It did not own the transport trailer which Arthur drove. It did not employ plaintiff Arthur or give him any instructions.

As we see the matter no duties were established by plaintiff's proofs which ran from defendant Square Deal to plaintiff. Nor was there any evidence of breach of any duty on Square Deal's part. As to defendant Square Deal, the judgment of the District Court must plainly be affirmed.

The appellate issues pertaining to defendant Chrysler Corporation are quite different. As to Chrysler, appellant Arthur claims:

1) That under the proofs, the jury could have inferred that the emergency brake on the automobile Arthur was seeking to unload was defective and that that defect caused his injury, and

2) That under the proofs the jury could have found that Chrysler violated its duty to warn plaintiff of dangers known to it.

As to the products liability claim, we believe the law of Michigan, which we must seek to apply here, is best spelled out in Piercefield v. Remington Arms, 375 Mich. 85, 133 N.W.2d 129 (1965), where the Supreme Court of Michigan said:

"[S]omething more than injury must be shown in instances such as this plaintiff has pleaded, that is to say, he must allege and prove (a) the defect of manufacture upon which he relies, and (b) injury or damage caused by or resulting from such defect." *Id.* at 96, 133 N.W.2d at 134.

\* \* \* \* \* \*

"[A] plaintiff relying upon the rule must prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which he complains. When able to do that, then and only then may he recover against the manufacturer of the defective product." *Id.* at 98–99, 133 N.W.2d at 135.

The general negligence law of Michigan emphasizes that the parties are entitled to a trial of disputed issues of fact —including disputed inferences reasonably deducible from established facts— but that plaintiff must present sufficient evidence establishing his theory of fault beyond mere conjecture. Daigneau v. Young, 349 Mich. 632, 85 N.W.2d 88 (1957); Glinski v. Szylling, 358 Mich. 182, 99 N.W.2d 637 (1959).

In Kaminski v. Grand Trunk W. Ry. Co., 347 Mich. 417, 79 N.W.2d 899 (1956), the Michigan Supreme Court adopted this definition of conjecture:

" 'As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.' " Kaminski v. Grand Trunk W. Ry. Co., *supra* at 422, 79 N.W.2d at 902.

■ Against this background we examine the adequacy of plaintiff's proofs in the instant case. At the outset, compared to the ordinary products liability case, there are two glaring omissions in plaintiff's proofs. Plaintiff never identified the vehicle which he claimed to have caused his injury so that either he or the defendant who manufactured it could examine its performance. Nor did he attempt to prove any specific defect in the brake or offer any evidence presenting a theory of defective design or manufacture.

Of course, the courts do not require the impossible and plaintiff's injuries might well excuse his failure immediately to examine or identify the car with the allegedly malfunctioning brake. But it is hard to find an explanation or excuse for complete absence from this record of any attempt to locate or examine the claimed defective brake or to put defendant Chrysler on notice of the defect until nearly three years after the event, at the time when this suit was filed. In Perkins v. Township of Delaware, 113 Mich. 377, 71 N.W. 643 (1897), the Michigan Supreme Court said:

"It is the duty of the plaintiff who seeks to recover damages for negligence to place before the jury the actual conditions when it is within his power to do so." Perkins v. Township of Delaware, *supra* at 379, 71 N.W. at 644.

Cited with approval in Schedlbauer v. Chris-Craft Corp., 381 Mich. 217, 232, 160 N.W.2d 889 (1968).

We are unpersuaded (as we believe the District Judge was) that appellant in this case met this test.

Further, we agree with the District Judge that submission to the jury of the defective brake issue on the factual record described above would require "speculation" prohibited by the rule adopted in *Kaminski, supra.*

There are at least these possible hypotheses concerning why the accident happened:

1) The brake failed due to a defect of some kind.

2) The brake was not set properly by plaintiff.

3) The incline on which it was placed exceeded 20%.

4) The inspector interfered with the setting of the brake.

Plaintiff's testimony, of course, served to make a jury issue as to hypothesis number two, but we find no evidence which serves to apply "selectively" to hypothesis number one, as opposed to hypotheses numbers three and four. *See generally* Kaminski v. Grand Trunk W. Ry. Co., 347 Mich. 417, 79 N.W.2d 899 (1956); Daigneau v. Young, 349 Mich. 632, 85 N.W.2d 88 (1957); Glinski v. Szylling, 358 Mich. 182, 99 N.W.2d 637 (1954); General Motors Corp. v. Wolverine Ins. Co., 255 F.2d 8 (6th Cir. 1958).

We recognize that plaintiff-appellant relies upon Bronson v. J. L. Hudson Co., 376 Mich. 98, 135 N.W.2d 388 (1965), and Schedlbauer v. Chris-Craft Corp., 381 Mich. 217, 160 N.W.2d 889 (1968), as warranting reversal of the District Court in this case. We believe, however, that the facts as developed by the trial records were markedly different in those cases as compared to the case before us presently. In both *Bronson* and *Schedlbauer* plaintiff presented a great deal of technical evidence either designed to identify the defect or to rule out other possible causes of the injury complained of. In addition, in *Bronson* the allegedly offending garment was promptly returned to defendant, and in *Schedlbauer* the allegedly offending carburetor was under 60 feet of water and defendant there made no effort to secure or demand its production. In this case, as we have noted, there was a delay of plaintiff's notice and claim of nearly three years, and defendant's request for identification of the offending car and brake was almost immediate.

As to plaintiff's claim that Chrysler violated its duty to warn, plaintiff's reliance upon Comstock v. General Motors Corp., 358 Mich. 163, 99 N.W.2d 627 (1959), appears to us to be misplaced. In that case General Motors had positive and repeated notice of a serious design defect which, under certain conditions, caused complete brake failure without any warning to the driver. Here neither defect nor notice to Chrysler of defect were established by plaintiff's proofs.

Plaintiff-appellant also relies upon Restatement of Torts Second § 388, which we believe accurately reflects Michigan law. *See* Weekes v. Michigan Chrome & Chemical Co., 352 F.2d 603 (6th Cir. 1965). Section 388 provides:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endanged by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." Restatement (Second), Torts § 388 (1965).

The critical portion of § 388 for purposes of this phase of this appeal appears to us to be clause (b). The first comment on clause (b) provided by Restatement of Torts, Second, follows:

"Comment on Clause (b):

*k. When warning of defects unnecessary.* One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him, or of facts which to his knowledge make

it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made. However, the condition, although readily observable, may be one which only persons of special experience would realize to be dangerous. In such case, if the supplier, having such special experience, knows that the condition involves danger and has no reason to believe that those who use it will have such special experience as will enable them to perceive the danger, he is required to inform them of the risk of which he himself knows and which he has no reason to suppose that they will realize."

Here, to the degree that there was a hazard involving the use of this product in the unloading phase of the transportation process, it was as obvious to plaintiff, an experienced driver of haulaway trucks, as to defendant Chrysler.

■ Plaintiff, however, really relies upon the proposition that Chrysler, having warned drivers against transporting cars with the parking sprag engaged, should also have told them to reengage it before unchaining a car which was on an incline. We read the instruction relied upon as directed to protection of the material in transit and not as constituting loading and unloading instructions. Further, there is no evidence at all as to whether the parking sprag would serve satisfactorily to hold an automobile on the sort of incline involved in this case. As to this last issue also, appellant failed to bear the plaintiff's burden of proof.

The judgment of the District Court is affirmed.