PICKENS *v.* CROWLEY-MILNER & CO.

SAME *v.* SAME.

1. NEGLIGENCE—LIABILITY OF SELLER OR MANUFACTURER TO THIRD PARTY.

Generally, contractor, manufacturer, or vendor is not liable to third parties who have no contractual relations with him for negligence in construction, manufacture, or sale of articles he handles.

---

As to liability of manufacturer, packer or vendor to persons not in privity of contract, for injuries from defects in article sold, see annotation in 19 L. R. A. (N. S.) 923; 48 L. R. A. (N. S.) 213; L. R. A. 1916B, 879.

On liability of dealer for personal injuries from article not obviously dangerous, see annotation in 13 L. R. A. (N. S.) 382.

2. SAME—EXPLOSIVES—SELLER WITHOUT NOTICE OF DEFECT NOT
    LIABLE.
    Seller of gasoline stove, who had no knowledge of any defect
        therein, was not liable to purchaser's granddaughter for in-
        juries sustained as result of explosion.

3. SAME—EVIDENCE OF NOTICE TO SELLER—DIRECTED VERDICT.
    In action against seller for personal injuries caused to pur-
        chaser's granddaughter by explosion of gasoline stove, evidence
        as to telephone conversation between purchaser's daughter and
        defendant's salesman as to how stove was working, *held*, insuffi-
        cient to take to jury question as to seller's knowledge of dan-
        gerous condition of stove.

4. SAME—LIABILITY OF MANUFACTURER—DIRECTED VERDICT.
    In action against manufacturer for personal injuries caused by
        explosion of gasoline stove, on theory that stove was defective,
        verdict was properly directed in favor of defendant where
        trial court's finding that explosion was caused by flooding
        burner was justified under evidence.

Appeal from Wayne; Murphy (Alfred J.), J. Sub-
mitted January 13, 1932. (Docket Nos. 14, 15, Cal-
endar Nos. 35,810, 35,811.) Decided April 4, 1932.

Separate actions of case by Clarence and Lucia
C. Pickens against Crowley-Milner & Company, a
corporation, and National Enameling & Stamping
Company, Inc., a foreign corporation, for personal
injuries sustained by plaintiff Lucia C. Pickens al-
leged to be due to defective construction of a gaso-
line stove. Cases tried together. Directed verdicts
and judgments for defendants. Plaintiffs appeal.
Affirmed.

*Bresnahan & Groefsema,* for plaintiffs.

*Lucking, Van Auken & Sprague (Fred J. Schu-
mann,* of counsel), for defendant Crowley-Milner &
Company.

*Stevens T. Mason,* for defendant National Enam-
eling & Stamping Company.

SHARPE, J. On July 13, 1928, the defendant Crowley-Milner & Company sold a gasoline air pressure stove, known as the "Nesco," to Mrs. Whittemore, the grandmother of the plaintiff Lucia C. Pickens. The price was $33, $3 of which was then paid and a contract entered into for the payment of the balance in monthly payments of $5 each. Mrs. Lucy McCloskey, a daughter of Mrs. Whittemore, was with her at the time, and acted as spokesman for her in making the purchase. No demonstration of its operation was made. The stove was delivered the next day, crated, but was easily uncrated and set up for use. With it came a book of printed instructions for operating it. Mrs. McCloskey testified that she read the instructions several times, and then tried to light the stove, but "could not get the burner to work right. It flared up, it didn't get blue as it should get, it flamed up to the ceiling;" that she called the store by telephone, and later got in touch with the salesman who made the sale, and after informing him as to "how it was working," he told her to "give it a little more air and it will be all right;" that a few days later she again tried to start it, but "could not get any results;" that—

"Mrs. Pickens got out of bed; I was late, she wanted to help me. I was in the kitchen; I had just left the room to come out; it was burning, it flared up, and I thought she would try to fix it for me.

"Q. How far had you got out of the room?

"A. A few feet, just out of the door; I heard the explosion, and I heard her scream, and I dropped the wood I had in my hand and ran."

The plaintiff Mrs. Pickens testified that she had not seen the book of instructions; that—

"Wednesday morning my aunt asked me to come down and help make breakfast for the men. When

I got into the kitchen, I observed the gasoline stove; the flames were shooting to the ceiling. I went by the stove; I saw it flaming, and I tried to shut it off. The stove itself was burning, I suppose the burner; the flame was shooting to the ceiling. I mean the flame that was shooting out of the burner.

"*Q.* What did you see other than that about the stove?

"*A.* That was all; as I bent to look at it, it exploded.

"*Q.* What did you notice as to the presence or absence of gasoline anywhere?

"*A.* There was some in the tray.

"*Q.* When did you see that?

"*A.* As I bent down.

"*Q.* When did you bend down?

"*A.* I tried to put the fire out so that it would not explode.

"*Q.* Did you notice anything about the other part of the stove, about the lighter or anything of that kind?

"*A.* No, I didn't have time.

"*Q.* Where was the gasoline that you observed?

"*A.* In the tray.

"*Q.* The tray was where, with respect to the flame?

"*A.* Under the burner.

"*Q.* How far could you stoop down; how far did you get about your operation there?

"*A.* I just bent down as the stove exploded.

"*Q.* You just bent down?

"*A.* I just bent down and that is all I remember."

She was seriously injured as the result of the explosion, and brought this action against Crowley-Milner & Company and the National Enameling & Stamping Company, Inc., the manufacturer of the stove, to recover the damages due thereto.

Her husband, Clarence Pickens, also brought action to recover the loss he has sustained by the

injury to her. By agreement of counsel, the two causes were "tried simultaneously before the same jury."

At the conclusion of the plaintiffs' proofs, counsel for both defendants moved for a directed verdict. After argument, the motion was granted as to the defendant Crowley-Milner & Company and denied as to the other defendant. Proof was then submitted by it, and at the conclusion of all the proofs the motion was renewed and granted, and judgments entered in both cases for the defendants. Plaintiffs have appealed therefrom.

1. *Liability of Crowley-Milner & Company.*

No contractual relation existed between this company and either of the plaintiffs. The stove in question was purchased by it from a reputable manufacturer and was delivered, crated, to the purchaser, Mrs. Whittemore. The liability of a vendor in such a case was considered at some length in *Pesavento* v. *Du Pont de Nemours & Co.*, 240 Mich. 434. The general rule applicable thereto, as stated in *Huset* v. *Case Threshing Machine Co.*, 57 C. C. A. 237 (120 Fed. 865, 61 L. R. A. 303), was quoted with approval as follows:

"The general rule is that a contractor, manufacturer, or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of the articles he handles."

The exceptions thereto were then stated, and it is upon the third one of these that plaintiffs' attorneys rely.

"The third exception is that one who sells or delivers an article which he knows to be imminently dangerous to life or limb to another without notice

of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there was any contractual relations between the parties or not.''

In placing a construction upon this exception, Mr. Justice McDonald, speaking for the court, said:

''The true basis for liability, where knowledge is required, is not negligence at all, but intentional wrong. When a vendor knows that an article is imminently dangerous, and with such knowledge sells and delivers it to another without informing him of its dangerous character, he is not guilty of negligence, but of an intentional wrong for which he is liable to any one injured by its use regardless of contractual relations. In such a case contractual relations are immaterial. The liability is apart from the contract. So in the instant case, if the defendant had sold and delivered this fuse to the mining company, knowing that it was defective and for that reason dangerous, and had failed to inform the mining company of the defect, it would be liable to the plaintiff who was without fault in using it. Without knowledge of the defect its only liability would be on the contract to the purchaser. It does not appear that the defendant knew of the defect in the fuse. The evidence is clear that it had no such knowledge. It received the fuse from the manufacturer and delivered it to the mining company in the original package. It was liable on its contract to the purchaser and to no one else.''

Under this holding it seems clear that no liability attached to this defendant by reason of the sale and delivery of the stove to Mrs. Whittemore.

But it is insisted that, by reason of the conversation on the telephone between Mrs. McCloskey and the salesman of the defendant, it ''was for the jury to say whether or not the vendor had knowledge of

the imminently dangerous condition of the stove.'' This conversation has been quoted. The only advice given by the salesman was that Mrs. McCloskey should "give it a little more air.'' In disposing of this claim on the part of the plaintiffs, the trial court said:

"I can see no ground for that contention whatever. There is nothing here to show that the added air pressure brought about the conflagration or the explosion, or whatever it should be rightly designated. Even conceding that that assurance—that the stove was all right—was made, and conceding that what was needed by Mrs. McCloskey was the employment of additional air pressure, there is nothing here that would enable you to say on your oath, or enable me to say, that the use of that added air pressure brought about the explosion.''

A careful reading of the record satisfies us that the above statement was warranted, and justified his action in directing a verdict for this defendant.

2. *Liability of the Manufacturer.*

This claim is predicated upon the fact that there were defects in the construction of the stove; that such defects rendered it imminently dangerous, and that whether the explosion was due thereto was a question for the jury. The claimed defects are, (a) "That the lighter of one of the burners had dropped down'' and "would not stay up,'' and that (b), as testified by Mrs. McCloskey, "there was a nut gone, a small nut, and we could not find that nut in the whole kitchen; I swept there and hunted for it.'' She also testified:

"I didn't see the nut was off when I was lighting. The nut knocked my niece down. The mark of that nut was on the back of her neck. You could see its size. I don't know how the nut could do it.''

These two statements cannot well be reconciled. A similar stove was offered in evidence and subject to examination by the court and jury.

(a) The lighter spoken of is referred to by counsel and other witnesses as an operating lever. In discussing this claim the trial court said:

"It was claimed at the outset of this trial, at the least, the testimony up to a very late period in the trial, seemed to proceed upon the theory that the operating lever which controlled the end lever of the apparatus failed to stay up, but fell down and continuously kept in a fallen position, and that thereby the injuries in question were caused, and of course, that flooded it completely. It was shown from testimony by the defendant that that end control lever had absolutely nothing whatever to do with the feeding of the gasoline to the fourth burner, which was the one which was in operation and which ignited, and which burned the plaintiff."

(b) It is insisted that the absence of the "nut," also spoken of as a "valve drain plug," permitted gasoline to leak out of the tank in which it was kept, and that its ignition caused the explosion. In the printed instructions as to the manner of generating the gas and lighting the main burner, it is said:

"Be sure main burner valve, end burner valves and match lighter valve are closed. Open fuel valve one turn.

"Be sure packing nuts do not leak. Tighten them enough so that valve stems turn easily, but not too freely."

Instructions for lighting were then given, followed by:

"If burner continues to burn with yellow flame, it shows that mixing chamber has been flooded.

"To drain: Close all valves and unscrew drain plug in mixing chamber, drain gasoline into small cup, replace plug and generate as instructed."

Had this nut or plug to a drain valve been missing, Mrs. McCloskey would surely have discovered it. If it struck Mrs. Pickens in the neck, it must have been attached to the stove at the time of the explosion. It is clearly apparent, as found by the trial court, that this explosion was caused by the flooding of the burner by Mrs. McCloskey when attempting to light the stove.

The judgments are affirmed.

CLARK, C. J., and McDONALD, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.