PIERCEFIELD v. REMINGTON ARMS COMPANY, INC.

DISSENTING OPINION.

O'HARA, J.

1. WORDS AND PHRASES—INNOCENT BYSTANDER—MERE BYSTANDER—
SALES.

*There is no legal distinction between the terms* innocent bystander *and* mere bystander *as the terms are used in products liability law.*

2. COURTS—JUDGMENT—COLLOQUY.

*Courts speak through their orders and decrees, not through colloquy between judge and counsel, and where there is a contradiction the orders and decrees must prevail.*

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—JUDGMENT—COL-
LOQUY—NOTICE OF BREACH OF WARRANTY.

*The issue of adequacy of notice of alleged breaches of warranties held, before the Supreme Court for determination, where order from which appeal was taken recited that plaintiff had failed to give timely notice of alleged breaches of warranties to the defendants as required by the then applicable sales act, notwithstanding record contains colloquy between judge and plaintiff's counsel wherein judge specifically declined to rule on question of notice (CL 1948, § 440.49).*

4. SALES—IMPLIED WARRANTY—BYSTANDER.

*The doctrine of implied warranty in a product sold in the course of trade does not extend to a bystander not in the distributive chain who was injured by reason of the use of the product by the retail purchaser thereof (CL 1948, § 440.49).*

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4–8, 10–13] 46 Am Jur, Sales §§ 332 *et seq.*, 346 *et seq.*, 356–358.
Privity of contract as essential to recovery in negligence action against manufacturer or seller of product alleged to have caused injury. 74 ALR2d 1111.

[2] 30A Am Jur, Judgments § 2 *et seq.*

[3] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

[5, 7] 56 Am Jur, Weapons and Firearms § 29.
Liability of manufacturer or seller for injuries caused by firearms, explosives, and inflammables. 80 ALR2d 488.

5. SAME—IMPLIED WARRANTY—BYSTANDER—FIREARMS.

*Order of trial court, entered in action by plaintiff who was injured when his brother's shotgun barrel exploded, whereby count based on implied warranty was dismissed* held, *proper, since plaintiff was a bystander outside of the distributive chain, it being noted that recovery may yet be had in tort upon proper proof (CL 1948, § 440.49).*

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—IMPLIED WARRANTY —ADEQUACY OF NOTICE.

*Whether or not plaintiff had given defendant firearms manufacturer adequate notice of alleged breach of implied warranty is not decided, where plaintiff is determined to have been a bystander not entitled to recover on the basis of implied warranty (CL 1948, § 440.49).*

OPINION OF THE COURT.

7. SALES—IMPLIED WARRANTY OF FITNESS—SHOTGUN SHELLS—BY-STANDER—PRIVITY.

Whether plaintiff, a bystander who was injured when his brother's shotgun barrel exploded, could sue the manufacturer, wholesaler, and retailer of allegedly defective shotgun shells on theory of implied warranty, there being no legal privity of contract, is a question which arises under, and is to be determined according to, the standards of the common law, since an affirmative answer would involve a common-law remedy for tortious wrong bottomed upon breach of a legally implied, rather than a contractually created, warranty of fitness.

8. SAME—IMPLIED WARRANTY—PRIVITY—PROXIMATE CAUSE—BURDEN OF PROOF.

A plaintiff, without privity of contract, who sues the manufacturer, wholesaler, and retailer of a product for injuries sustained must, in order to recover damages, not only allege and prove the defect in manufacture upon which he relies, but also that the injury or damage was caused by, or resulted from, such defect.

9. SAME — IMPLIED WARRANTY — DEFECTIVE PRODUCT — PROXIMATE CAUSE.

Implied warranty recovery is based upon factor that the product has been transferred from the manufacturer's possession while defective in that it fails either to be reasonably fit for the particular purpose intended or to be of merchantable quality and upon the factor that because it is defective, the product causes personal injury or property damage.

10. SAME—IMPLIED WARRANTY—NEGLIGENCE—EXPRESS REPRESENTA-
TIONS.
   Liability under the doctrine of implied warranty of fitness of a
      product imposed by common law does not embrace the concept
      of negligence or fault or express representations or agreements
      by the manufacturer.

11. SAME—IMPLIED WARRANTY—PRIVITY.
   A person injured because of a defective product is not required
      to show privity of contract in order to recover from the manu-
      facturer on the theory of breach of implied warranty of fitness.

12. SAME—IMPLIED WARRANTY—PRIVITY OF CONTRACT.
   Lack of privity being no longer a defense to an action for breach
      of an implied warranty of fitness of the product for the purpose
      for which intended, hence it was error to dismiss count in plain-
      tiff's declaration, based on implied warranty of shotgun
      shell, in action against its manufacturer, wholesaler, and re-
      tailer, because plaintiff, a bystander when shotgun barrel ex-
      ploded, had no privity of contract with the defendants.

13. SAME—IMPLIED WARRANTY—NOTICE OF BREACH—CONTRACTS.
   The provision of the uniform sales act requiring party relying
      upon a breach of an express or implied warranty to give notice
      to the seller of such breach within a reasonable time does not
      apply to the plaintiff in an action based on an implied war-
      ranty that does not arise from a contract of sale (CL 1948,
      § 440.49).

Appeal from Ingham; Salmon (Marvin J.), J.
Submitted April 10, 1964. (Calendar No. 16, Docket
No. 50,211.) Decided March 1, 1965.

Action by Gordon Piercefield against Remington
Arms Company, Inc., a foreign corporation, Scha-
berg-Dietrich Hardware Company, a Michigan cor-
poration, and Wendell Scheidt, doing business as
Scheidt's Hardware, on 2 counts, one of negligence
and the other of implied warranty, for personal
injuries sustained because of defective shotgun am-
munition.    Implied warranty count dismissed on

motion. Plaintiff appeals. Reversed and remanded for entry of order denying motions to strike.

*Peter F. Cicinelli, Eugene Mossner,* and *Edward B. Spence,* for plaintiff.

*Cholette, Perkins & Buchanan* (*William D. Buchanan, Edward D. Wells,* and *Grant J. Gruel,* of counsel), for defendants Remington Arms Company, Inc., and Schaberg-Dietrich Hardware Company.

*Fraser, Trebilcock, Davis & Foster,* for defendant Wendell Scheidt, doing business as Scheidt's Hardware.

O'HARA, J. (*dissenting*). Gordon Piercefield, plaintiff here, was injured when the barrel of a shotgun, fired by his brother, exploded. Fragments of metal became imbedded in his brain. The shell fired was manufactured by the defendant, Remington Arms Co., Inc. Defendant Schaberg-Dietrich Hardware Company is the wholesaler, alleged to have sold the shell in question to defendant Scheidt's Hardware. Norman Piercefield, plaintiff's brother, claims to have purchased the shell from defendant retailer Scheidt. It is conceded that plaintiff was neither a purchaser nor a user of the shell. No claim is made that plaintiff's cause of action, as alleged, derives from any relationship between him and his brother. For the purpose of decision, plaintiff and the purchaser-user are strangers. In the idiom of products liability law, plaintiff is an "innocent bystander," or a "mere bystander," dependent upon who employs the term. There is no legal distinction.

In consequence of his injury which occurred on November 26, 1957, plaintiff by 2-count declaration,

filed November 10, 1960,[1] asserted liability against
all defendants. In the first count labeled "Negli-
gence" he claims violation of duty of care in man-
ufacture, failure to inspect, failure to warn, and
foreseeability of the consequences of the alleged lack
of care. In count 2, labeled "Implied Warranty,"
plaintiff charges the shell was not suitable for its
intended use and that plaintiff was entitled to rely
upon and did rely upon the implied warranty of fit-
ness and suitability which attended the manufacture,
distribution, and sale of the product.

Responsively, defendants denied some of these al-
legations. Affirmatively, as to the negligence count,
they asserted contributory negligence of a third
party for which defendant was not responsible; and
as to the warranty count claimed that plaintiff, being
neither a purchaser nor a user, was entitled to the
benefit of no warranty, express or implied. As to
the warranty count, defendants also pleaded affirma-
tively that if any warranty did extend to plaintiff,
he was not entitled thereto by reason of his failure
to comply with the notice requirements of the uni-
form sales act, PA 1913, No 100, § 49 (CL 1948,
§ 440.49 [Stat Ann § 19.289]).[2] These affirmative
defenses were duly controverted and defendants
thereafter moved in the alternative to dismiss or to
strike, and for judgment on the pleadings. Briefs
were submitted, oral argument heard, and on De-
cember 7, 1962, the trial court granted the motion
to dismiss "count two, the implied warranty count"
as to all defendants. Plaintiff appealed. There is
a discrepancy between the wording of the order dis-
missing count two and the very clear and unequiv-

---

[1] A summons issued October 4, 1960.

[2] In effect and applicable to this action, PA 1913, No 100, the
uniform sales act, repealed in its entirety by PA 1962, No 174, uni-
form commercial code, effective January 1, 1964. Substance of PA
1913, No 100, § 49, appears in PA 1962, No 174, § 2607 (CL 1948,
§ 440.2607 [Stat Ann 1964 Rev § 19.2607]).

ocal statement of the trial judge in his ruling on the motion from the bench:

"It seems clear to me that our Supreme Court has from time to time, to-wit, in the case of *Manzoni*[3] and *Spence*,[4] extended the rule to a consumer, to a remote buyer, to a user, and if they want to extend it further I think that is up to them. I think that it is up to this court to follow the law as it is now, and at the present time I don't know of any Michigan case that we can point to that would permit this court to say that a bystander is entitled to proceed on the theory of an implied warranty.

"For that reason, I will so hold. * * *

"*Mr. Mossner:* Thank you, Your Honor. You are not ruling, then, on the notice, Your Honor?

"*The Court:* No. I don't think it is necessary to rule on the question of notice.

"*Mr. Mossner:* Well, I just thought that perhaps if we get clarification on this phase of it we may get clarification on the whole thing."

The order contains the following wording:

"*That plaintiff failed to give timely notice of the alleged breaches of warranties to the defendants herein as required by CL 1948, § 440.49 [Stat Ann § 19.289], being uniform sales act, § 49, and that there was no implied warranty by the defendants herein running to the benefit of this plaintiff, a mere third party bystander.*" (Emphasis supplied.)

This contradiction does not ease our task in delineating issues on review. We are of course bound by the court's order. It is axiomatic that courts speak through their orders and decrees, not through colloquy between judge and counsel. Intended or not, the issue of adequacy of notice by reason of the wording of the order is before us. We suggest

---

[3] *Manzoni* v. *Detroit Coca-Cola Bottling Co.*, 363 Mich 235.

[4] *Spence* v. *Three Rivers Builders & Masonry Supply, Inc.*, 353 Mich 120.

strongly, care by court and counsel both in the prep-aration and approval of orders to the end that such apparent contradiction does not reoccur.

We have then before us 2 questions. First, was plaintiff entitled to the benefit of the implied warranty of fitness that attended the manufacture, distribution, and sale of the involved shell? Second, if he were so entitled (a) is notice of the alleged breach a condition precedent to his maintenance of his action? (b) if such notice be requisite, was a letter from plaintiff's counsel to defendant Remington Arms Co., Inc., sufficient compliance with the notice requirement as to it.

We examine question one. Plaintiff, as earlier noted, did not purchase or in any manner use the claimed defective shell. We are not therefore, as defendants urge strongly, concerned with a question of privity of contract. If plaintiff, as a bystander outside the chain of sale or use, be entitled to recover in warranty, it would be a logical abortion to require of him privity to someone in the "distributive chain." To what end? We removed that requirement in the case of a purchaser, however remote, in *Spence* v. *Three Rivers Builders & Masonry Supply, Inc.,* 353 Mich 120. We do not have before us the question of a nonbuying consumer of a food product manufactured and sold for human consumption as was presented and decided in *Manzoni* v. *Detroit Coca-Cola Bottling Company,* 363 Mich 235. As defendants put it bluntly in their brief, the proposition is simply this:

"If we start from what appellees considered the incorrect assumption that all injured persons are entitled to recover from a manufacturer who puts the product in the market, merely because of the injury, then this ends the matter and the court can, and should, say so, in one crystal-clear paragraph,

unencumbered with sophistries or other unnecessary explanations."

With equal candor, appellees state further:

"Prior to *Spence* and *Manzoni*, an injured plaintiff could hardly expect to recover at all from a manufacturer. See such Michigan cases as *Pesavento* v. *E. I. duPont deNemours & Co.* (1927), 240 Mich 434; and *Pickens* v. *Crowley-Milner & Co.* (1932), 258 Mich 102. This inability to recover goes as far back as Mr. Winterbottom's problem in 1842, commented upon in annotation, 74 ALR2d 1111, at page 1131:

" 'It is frequently stated that it is a "general rule" that a manufacturer or seller of a product alleged to have caused injury cannot be held liable therefor, on the ground of negligence, to one with whom he is not in privity of contract. At the foundation of this "general rule" as to the nonliability of a manufacturer to a remote vendee or ultimate consumer of the manufactured product is the English decision in a case which does not involve the liability of a manufacturer or seller, but of a contractor. The case is, of course, *Winterbottom* v. *Wright* (1842), 10 Mees & W 109 (152 Eng Rep 402).'

"At page 1134 it is said:

" 'Lying at the core of complaints respecting the privity rule of *Winterbottom* v. *Wright* is, unquestionably, its unworkability in modern times, that is, its inherent inability to assure fundamental justice in contemporary litigation involving product-caused injury.' "

It seems to us that in the never-ending process of adjusting settled rules of law to changing conditions in society the courts have taken seven-league-boot strides toward equalizing the positions of injured plaintiffs, manufacturers, distributors, and retailers. Within the "distributive chain" the relative positions have not only been equalized, as was

long overdue, but the advantage, if any now exists, has shifted to the injured plaintiff.  In Michigan he may proceed in warranty or tort (despite some rather paradoxical language in *Spence*).  In warranty, courts responded to the " 'ever-growing pressure for protection of the consumer, coupled with a realization that liability would not unduly inhibit the enterprise of manufacturers and that they were well placed both to profit from its lessons and to distribute its burdens.' "  *Manzoni, supra,* p 241, and footnote sources 13.

Appellees argue to us that as yet no State has extended the warranty theory of recovery to bystanders, and at the same time repudiated the notice requirements generally required precedently to recover thereunder.  Appellants urge not only that we should extend the warranty theory of recovery without privity to bystanders, but that "enlightened jurisdictions" should not require notice because plaintiff-bystander is not a "buyer" and hence the provisions of the uniform sales act should not apply. They contend that in any event as to defendant Remington, notice was in fact timely given.  That our State, nor any other State, has not yet held as appellant urges should be held is not *per se* valid basis for our not so doing now.  We do not aspire to regain the dubious distinction we enjoyed as the last State to discard imputed negligence in the case of blameless automobile guest passengers in actions against third-party wrongdoers.[5]  Nor do we care to become, without a clearly demonstrated need, judicial pioneers ordaining new theories for recovery merely because regrettable injury has occurred.

With the availability to him of tort recovery upon proper proof, we do not turn plaintiff away without remedy.  His negligence action impends.  As evi-

---

[5] *Bricker* v. *Green,* 313 Mich 218 (163 ALR 697).

dence of negligence becomes recognized as an inference to be drawn by the trier of the facts from the total evidentiary and testimonial complex, his problem of proof is lessened. Whether to call this principle by its sonorous Latin birth-name *res ipsa loquitur,* or to do as we did years past in *Hertzler* v. *Manshum,* 228 Mich 416, at p 421, say "The poisoned flour speaks for itself; unexplained it evidences negligence," seems inconsequential.

We are not unmindful that under our adversary system this proof of negligence, or lack thereof, rests as often upon the skill of the advocate as upon any absolutes of fact. But thus it is, and thus it will remain until society decrees otherwise. Meanwhile, the judiciary can only continue to adjust within the system, the rights of the parties by affirming, reversing, overruling, modifying, reconciling, and distinguishing precedents and principles, vulnerable always to the critics' cry of "finding legal loopholes", "judicially legislating", and chained by blind devotion to *stare decisis.*

In the case at bar, we are not convinced we should extend our doctrine of warranty recovery to bystanders outside the "distributive chain." This for reason that whatever the refinements of historic origins, similarities and distinctions between tort and warranty may be (see 64 Columbia L Rev p 916 [1964])—forms of action and varying requirements of proof and differing times for limitations of actions are matters, not just of form but of the substance of a jurisprudence. They are not immutable to be sure, but neither are they to be relegated to the classification into which Virgil cast the fair sex *"semper varium et mutabile."*[6] An action for breach of warranty, whether or not "sounding" in tort, is still essentially a contract action. To recover there-

6 See Virgil's Aeneid, Book 4.—REPORTER.

under a plaintiff has to have some relationship to the contract of sale, and the use which implicitly follows thereafter.

For the reasons hereinbefore set out, the order of the trial judge dismissing "Count Two (implied warranty)" as to plaintiff bystander should be affirmed. In so holding, we do not reach the questions of the necessity for, nor the sufficiency of, the alleged notice to appellee Remington Arms Co., Inc.

Appellees should tax costs.


KELLY, J., concurred in result.


BLACK, J.   This suit for personal injuries was commenced in 1960. The factual conclusions declared upon by plaintiff are summarized in Justice O'HARA's opinion. Upon like motions filed by the defendant manufacturer, wholesaler, and the retailer, the trial court ordered stricken the second count of plaintiff's declaration. The stricken count is headed "Implied Warranty." Plaintiff has appealed and presents two questions:

"Did the trial court err in holding that plaintiff could not sue the defendants (the manufacturer, wholesaler, and retailer of certain allegedly defective shotgun shells) on the theory of breach of implied warranty, because there was no privity of contract?

"Was the plaintiff required to give notice to the defendants of the breach of warranty?"

*First:* This question arises under and is due for determination according to the standards of the common or bench law. In event the Court's answer to such question is affirmative, the result will be that of affirming a common-law remedy for tortious wrong bottomed upon breach of a legally implied, rather than a contractually created, warranty of

fitness. This must be so since it is agreed that the plaintiff, a so-called bystander, did not at any time stand in a position of legal privity with any defendant.

To open ensuing discussion, I am obliged to record disagreement with Justice O'Hara's statement that "the proposition is simply this":

"If we start from what appellees considered the incorrect assumption that all injured persons are entitled to recover from a manufacturer who puts the product in the market, merely because of the injury, then this ends the matter and the court can, and should, say so, in one crystal-clear paragraph, unencumbered with sophistries or other unnecessary explanations."

A more accurate statement of "the proposition" is that something more than injury must be shown in instances such as this plaintiff has pleaded, that is to say, he must allege and prove (a) the defect of manufacture upon which he relies, and (b) injury or damage caused by or resulting from such defect. As said so well in *Picker X-Ray Corp.* v. *General Motors Corp.* (Mun App DC, 1962), 185 A2d 919, 922:

"There seems to be some confusion in understanding the nature of implied warranty liability. In the first place, concepts of negligence and fault, as defined by negligence standards, have no place in warranty recovery cases. Proof of negligence is unnecessary to liability for breach of implied warranty and the lack of it is immaterial to defense thereof. Since the warranty is *implied,* either in fact or in law, no express representations or agreements by the manufacturer are needed. Implied warranty recovery is based upon two factors: (a) The product or article in question has been transferred from the manufacturer's possession while in a 'defective' state, more specifically, the product

fails either to be 'reasonably fit for the particular purpose intended' or of 'merchantable quality,' as these two terms, separate but often overlapping, are defined by the law; and (b) as a result of being 'defective,' the product causes personal injury or property damage."

This case, like several others submitted early last year, has remained under discordant consideration since April 10, 1964. We are favored with excellent briefs by both groups of counsel. In and from them the Court has found and dutifully examined no end of arrayed and opposing authorities and textwritten views. The orally argued and briefed presentations, and the ensuing exercise in research, have been both helpful and informative. Yet they do but lead to verdict that the stated question has already been foreclosed—for the affirmative—by our own decisions.

At first, finding myself unable to agree with Justice O'HARA, a lengthy opinion standing for reversal was thought to be in due order. Such a draft was prepared, in rough form. It included a lengthy review of what has transpired judicially since Justice Cardozo wrote, 34 years ago, his oft-quoted epigram concerning the "citadel of privity."[1] Upon second thought, though, it has come to mind that the profession is familiar enough with the myriad of words textualists and judges have written for and against liability without privity, and that what is needed of this Court, here and now, is a definite rule and a definite result, written simply with references which appeal to us as both trendful and best reasoned.

Agreeing as all of our recent decisions do with the developing weight of authority, the essence of

---

[1] "The assault upon the citadel of privity is proceeding in these days apace. How far the inroads shall extend is now a favorite subject of juridical discussion." *Ultramares Corp.* v. *Touche,* 255 NY 170, 180 (174 NE 441, 445, 74 ALR 1139, 1145).

which is that the manufacturer is best able to control dangers arising from defects of manufacture, I would say definitely that *Spence* v. *Three Rivers Builders & Masonry Supply, Inc.*, 353 Mich 120;[2] *Manzoni* v. *Detroit Coca-Cola Bottling Co.*, 363 Mich 235; *Barefield* v. *LaSalle Coca-Cola Bottling Co.*, 370 Mich 1, and *Hill* v. *Harbor Steel & Supply Corp.*, 374 Mich 194, have put an end in Michigan to the defense of no privity, certainly so far as concerns an innocent bystander injured as this plaintiff pleads, and that a person thus injured should have a right of action against the manufacturer on the theory of breach of warranty as well as upon the theory of negligence.[3] Some quibbler may allege that this is liability without fault. It is not. As made clear above, a plaintiff relying upon the rule must prove a defect attributable to the manufacturer and causal connection between that defect and the

---

[2] A growing number of courts and legal writers look upon *Spence* as a leading case. That is evident upon perusal of the mass of material counsel have called to our attention. Professor Jaeger, formerly director of graduate research, Georgetown University Law Center and author of the current edition of Williston on Contracts, writes of *Spence* (16 Rutgers Law Review, "Warranties of Merchantability and Fitness for Use: Recent Developments," 493, 551):

"Cases holding the manufacturer, packer or processor liable, for breach of warranty, even in the absence of privity, definitely reflect the modern trend and probably the weight of authority. But going far beyond these are the cases where the only injury is to the purse, and no personal injury or illness is experienced. Conspicuously leading among these is *Spence* v. *Three Rivers Builders & Masonry Supply, Inc.* The subject matter of the contract was a building material described as 'cinder blocks,' which had been purchased by a builder for use in the construction of a home for the plaintiff who was clearly not in privity of contract with the defendant manufacturer. In a masterful opinion the court examines the pros and cons of privity, reviewing all of the pertinent precedents, and casts its lot with the more enlightened group of jurisdictions which consider privity a waning concept."

[3] For those interested in pursuing the subject exhaustively to date, reference is made to Jaeger, "Privity of Warranty: Has the Tocsin Sounded?", 1 Duquesne Law Review, Spring 1963, 1–142; Jaeger, "Product Liability: the Constructive Warranty," 39 Notre Dame Lawyer 501–556 (1964); "Strict Products Liability and the Bystander," 64 Columbia Law Review, 916–937 (1964); also 2 Harper & James, Torts, p 1572.

injury or damage of which he complains. When able to do that, then and only then may he recover against the manufacturer of the defective product.

Take the recent case of *Henningsen* v. *Bloomfield Motors, Inc.,* 32 NJ 358 (161 A2d 69, 75 ALR2d 1) as an example of reason for the rule. Would anyone, having read the court's exhaustive opinion, expect a result reasoned differently had, say, the plaintiff been a pedestrian who, when the Henningsen car "veered sharply to the right and crashed into a highway sign and a brick wall," suffered crushed legs as the car struck the wall? Take *Spence* as another example, and assume that the plaintiff there had been a bystander or visitor injured by a crumbling and buckling of some wall of the cottage which had been built of the defective blocks. Would our result have been different? See Justice VOELKER's discussion of the probable deterioration of the blocks and the likelihood of their endangering the structure itself in the future (p 126). Take *Hill* v. *Harbor Steel.* Would we have denied recovery—on the same theory—to the personal representative of, say, a municipal inspector or buyer of scrap, then lawfully in the yard and killed by the same explosion?

The fact is that Michigan, for abundantly worthy reasons, has eliminated lack of privity as a defense to actions as at bar, and that when the factual position of the suing plaintiff is so far causally removed as to render the defect a remote cause of his injury or damage, a case not now before us will come to consideration. It is enough to say, as the court did in *Henningsen* (32 NJ 415, 161 A2d 101, 75 ALR2d 37), that it is now not necessary to establish "the outside limits of the warranty protection."

*Second:* My answer to the quoted second question is foreshadowed by what appears above. The ques-

tion refers, of course, to the notice requirement of section 49 of the uniform sales act (CL 1948, § 440.49 [Stat Ann 1959 Rev § 19.289]).[4] For the same reasons as were made to appear in *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal 2d 57, 60–62 (27 Cal Rptr 697, 699–701, 377 P2d 897, 899–901), I would hold that the giving of notice under said section 49 is not a prerequisite to institution and maintenance of this plaintiff's suit. Said section 49 deals with the rights of the parties to a contract of sale. It does not require that notice must be given of breach of a warranty that arises by legal implication distinct from a contract of sale. "Such warranties are not imposed by the sales act, but are the product of common-law decisions that have recognized them in a variety of situations." (*Greenman,* at 61 [27 Cal Rptr 699, 377 P2d 899]).

A thoughtful thesis, written in 1962 by George E. Bushnell, Jr., of the Detroit Bar ("Practical Aspects of Defending Products Liability Cases," 11 Defense Law Journal 99), is built from a text of "Recognition of the Inevitable." Having considered *Henningsen, Spence,* and *Manzoni,* along with other like authorities, Mr. Bushnell concludes as I would conclude (p 101):

"The duty of impliedly warranting the quality and fitness of the product has become a duty imposed by law. In effect, the warranty runs with the chattel. Since the duty is not imposed by the terms of the contractual relationship, the requirement of notice under the uniform sales act has, in the better view if not in the majority view, been dissipated."

The article ends with a sound bit of advice (p 112):

---

[4] Now embodied in the uniform commercial code, PA 1962, No 174, § 2607 (CL 1948, § 440.2607, Stat Ann 1964 Rev § 19.2607).—RE-PORTER.

"What has been proposed here is, obviously, no panacea or sop to potential defendants. What has been proposed contemplates brute hard, expensive preparation and trial. I submit and I urge, there is no other way to defend a product liability action. The alternative is liability without fault!"

I would reverse and remand for entry of order denying the aforesaid motions to strike. Plaintiff should have costs.

T. M. KAVANAGH, C. J., and SOURIS, SMITH, and ADAMS, JJ., concurred with BLACK, J.

DETHMERS, J., did not sit.