*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAUGATUCK DUNES COASTAL ALLIANCE,

Plaintiff-Appellant,

v

SAUGATUCK TOWNSHIP, SAUGATUCK
TOWNSHIP ZONING BOARD OF APPEALS,
and NORTH SHORES OF SAUGATUCK, LLC,

Defendants-Appellees.

UNPUBLISHED
August 29, 2019

No. 342588
Allegan Circuit Court
LC No. 17-058936-AA

SAUGATUCK DUNES COASTAL ALLIANCE,

Plaintiff-Appellant,

v

SAUGATUCK TOWNSHIP ZONING BOARD
OF APPEALS, SAUGATUCK TOWNSHIP, and
NORTH SHORES OF SAUGATUCK, LLC,

Defendants-Appellees.

No. 346677
Allegan Circuit Court
LC No. 18-059598-AA

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In these consolidated appeals, plaintiff Saugatuck Dunes Coastal Alliance (plaintiff) appeals as of right the circuit court orders dismissing two separate appeals from decisions of defendant the Saugatuck Township Zoning Board of Appeals (ZBA). The ZBA's decisions each determined that plaintiff lacked standing to appeal the Saugatuck Township Planning Commission's (the Commission's) approvals of a condominium development project planned by defendant North Shores of Saugatuck, LLC (North Shores). Plaintiff is a nonprofit organization comprised of individuals who live and work in the Saugatuck area. In both of its orders, the trial court affirmed the ZBA's determinations that plaintiff lacked standing to challenge the approvals

-1-

of the condominium project. We affirm, but in Docket No. 342588, we remand for further consideration.

## I. BACKGROUND

North Shores owns approximately 300 acres of land (the property) in Saugatuck Township, directly north and adjacent to the Kalamazoo River channel at its opening to Lake Michigan. The property and much of the surrounding area is considered critical dune areas[1] by the Michigan Department of Environment, Great Lakes, and Energy (EGLE[2]). The property was zoned as R-2 Residential, and North Shores applied for preliminary special-use approval of a condominium development. The development would consist of 23 single family homes surrounding a "boat basin," a private marina including 33 "dockominium" boat slip condominium units, and related open space. On April 26, 2017, the Commission granted conditional approval of North Shores's planned development. The conditions included obtaining permits from the DEQ, the United States Corps of Engineers (USACE), and the United States Environmental Protection Agency (USEPA). Plaintiff appealed that conditional approval to the ZBA, which, on October 11, 2017, adopted a resolution after holding a public hearing that plaintiff lacked standing to pursue that appeal. In Docket No. 342588, plaintiff appealed the ZBA's decision to the circuit court, which affirmed and dismissed the appeal.[3]

In the meantime, North Shores obtained the required approvals. On October 23, 2017, the Commission granted final approval of the condominium project. Plaintiff appealed that final decision to the ZBA, which, on April 9, 2018, adopted another resolution after holding a public hearing that plaintiff lacked standing to pursue that appeal. In Docket No. 346677, plaintiff appealed the ZBA's decision to the circuit court. Once again, the circuit court affirmed the ZBA's determination that plaintiff lacked standing, and it dismissed plaintiff's appeal. Plaintiff appealed by right to this Court from both orders of dismissal by the circuit court, and we consolidated those appeals.[4]

## II. JURISDICTION

As an initial matter, North Shores contends that we lack jurisdiction over plaintiff's appeals. A challenge to subject-matter jurisdiction is a question of law, and it may be made at any time. *Smith v Smith*, 218 Mich App 727, 729-730; 555 NW2d 271 (1996). North Shores presents a cursory and conclusory argument that we would ordinarily refuse to consider. See

---

[1] See <https://www.michigan.gov/egle/0,9429,7-135-3311_4114_4236-70207--,00.html>.

[2] Formerly the Michigan Department of Environmental Quality (DEQ). See Executive Order 2019-2. The Department was known as the DEQ throughout the proceedings below.

[3] As will be discussed, plaintiff also appended two original claims to its appeal to the circuit court, which the circuit court apparently dismissed in the same order.

[4] *Saugatuck Dunes Coastal Alliance v Saugatuck Twp Bd of Appeals*, unpublished order of the Court of Appeals, entered January 22, 2018 (Docket Nos. 342588, 346677, and 346679).

*Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). However, subject-matter jurisdiction is of such critical importance that we must consider it upon challenge, or even sua sponte where appropriate. See *O'Connell v Director of Elections*, 316 Mich App 91, 100; 891 NW2d 240 (2016).

North Shore's challenge is based upon MCR 7.203(A)(1)(a), which states that this Court does not have jurisdiction over a claimed appeal by right from "a judgment or order of the circuit court . . . on appeal from any other court or tribunal." Presumably, North Shore contends that the ZBA in these matters acted as a "tribunal." An administrative agency that acts in a quasi-judicial capacity may be considered a "tribunal" for purposes of MCR 7.203(A)(1)(a). See *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 85-87; 832 NW2d 288 (2013). However, it appears to us that the ZBA decisions from which plaintiff seeks to appeal were made after public hearings, and that they were not contested proceedings. We reject North Shores's implied contention that the ZBA acted as a "tribunal" for purposes of MCR 7.203(A)(1)(a). We therefore also reject North Shores's challenge to our jurisdiction to address these appeals.

## III. STANDARD OF REVIEW

This Court reviews "a circuit court's decision in an appeal from a decision of a zoning board of appeals . . . de novo to determine whether the circuit court applied the correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the [ZBA's] factual findings." *Olsen v Chikaming Twp*, 325 Mich App 170, 180; 924 NW2d 889 (2018) (quotation marks and citation omitted; second alteration in original.) "Whether a party has standing is a question of law that is reviewed de novo." *Michigan Ass'n of Home Builders v City of Troy*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 156737, slip op at p 6). However, a party's right to appellate review of a decision by a ZBA does not turn on traditional principles of standing, but instead on whether the party is "aggrieved" by the ZBA's decision within the meaning of MCL 125.3605. *Olsen*, 325 Mich App at 179-182. "This Court also reviews de novo questions of statutory interpretation," with the goal of ascertaining the intent of the legislature as derived from the express language of the statute. *Michigan Ass'n of Home Builders*, ___ Mich at ___ (slip op at pp 6-7). Ordinances are reviewed in the same manner as statutes. *Gora v City of Ferndale*, 456 Mich 704, 711; 576 NW2d 141 (1998).

## IV. "AGGRIEVED PARTY"

Although "[m]unicipalities have no inherent power to regulate land use through zoning," the Michigan Legislature granted this authority through legislation. *Olsen*, 325 Mich App at 179. The Legislature combined three historic zoning acts into the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq*., which "grants local units of government authority to regulate land development and use through zoning." *Id*. "The MZEA also provides for judicial review of a local unit of government's zoning decisions." *Id*. MCL 125.3605 provides that "[t]he decision of the zoning board of appeals shall be final. A party aggrieved by the decision may appeal to the circuit court for the county in which the property is located . . ." MCL 125.3606(1) states:

Any party aggrieved by a decision of the zoning board of appeals may appeal to the circuit court for the county in which the property is located. The circuit court shall review the record and decision to ensure that the decision meets all of the following requirements:

(a) Complies with the constitution and laws of the state.

(b) Is based upon proper procedure.

(c) Is supported by competent, material, and substantial evidence on the record.

(d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals.

In *Olsen*, 325 Mich App at 180, this Court explained the difference between "standing" and "aggrieved party" analyses in cases involving an appeal from a decision of a ZBA. This Court stated that the "term 'standing' generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury." *Id*. However, pursuant to the MZEA, "a party seeking relief from a decision of a ZBA is not required to demonstrate 'standing' but instead must demonstrate to the circuit court acting in an appellate context that he or she is an 'aggrieved' party." *Id*. at 180-181. We expressly do not consider or decide whether, or to what extent, plaintiff might have standing under some other procedural posture or context.[5]

In *Olsen*, the appellant requested a variance under a zoning ordinance that required lots in a subdivision to have a minimum area of 20,000 square feet and a rear setback of 50 feet. *Olsen*, 325 Mich App at 175. The lot at issue had a square footage of 9,676 feet and would require a rear setback of 30 feet. *Id*. at 175-176. Neighboring property owners argued against issuance of the variance; however, following public comments and extensive discussion at a hearing, the ZBA approved the variance request. *Id*. at 176. This Court determined that the plaintiff's alleged injuries were insufficient "to show that they suffered a unique harm different from similarly situated community members . . . " *Id*. at 186. This Court acknowledged the potential for septic systems and setback requirements to affect the property of adjoining neighbors, but reasoned that the appellant would be unable to obtain permits to install any system in violation of the requisite health codes and building requirements. *Id*. Thus, the neighbors' anticipated harm was speculative. *Id*. at 186-187. Because the plaintiffs "failed to demonstrate special damages different from those of others within the community," this Court determined that the plaintiffs were not "aggrieved" pursuant to MCL 125.3605, and accordingly, "did not have the ability to invoke the jurisdiction of the circuit court . . . " *Id*. at 194.

Plaintiff argues that concepts of "standing" and "aggrieved party" are, in application, essentially indistinguishable. Plaintiff's position is understandable, especially because *Olsen*

---

[5] Additionally, the substantive merits of plaintiff's concerns regarding the condominium project are not before us at this time, and we express no opinion as to those merits.

observed that under both standing and "aggrieved party" analyses, "a party must establish that they have special damages different from those of others within the community." *Olsen*, 325 Mich App at 193. This Court in *Olsen* defined an "aggrieved party" as having "suffered some special damages not common to other property owners similarly situated," pursuant to "the long and consistent interpretation of the phrase 'aggrieved party' in Michigan zoning jurisprudence." *Id*. at 185 (citations and quotation omitted). Our Supreme Court concluded that a party may have standing by legislative grant or "if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010); *Olsen*, 325 Mich App at 192. These definitions superficially appear similar. Critically, however, the aggrieved party analysis refers to "other property owners similarly situated," whereas the standing analysis refers to "the citizenry at large."

Additionally, *Olsen* enumerated a variety of conditions that will not suffice to establish that a party is "aggrieved." In particular, "mere ownership of an adjoining parcel of land," the "mere entitlement to notice," and "[i]ncidental inconveniences such as increased traffic congestion, general aesthetic and economic losses, population increases, or common environmental changes" were all deemed inadequate to establish that a party is "aggrieved." *Olsen*, 325 Mich App at 185. Ecological harms are also insufficient. *Id*. at 186. Concerns over potential harms are also insufficient, at least where there is some basis, such as health and building permit requirements, to conclude that the potential is unlikely to become actual. *Id*. at 186-187. We do not interpret *Olsen* as foreclosing any possibility that such harms *could* result in a party being aggrieved if, for some reason, those harms specifically or disproportionately affect that particular party in a manner meaningfully distinct from "other property owners similarly situated." However, plaintiff critically misapprehends the analysis by referring to injuries that differ from "the public at large."

Plaintiff has submitted numerous affidavits apparently tending to show that the affiants will suffer harms distinct from the general public.[6] Plaintiff has *not* shown, however, that the affiants will suffer harms distinct from *other property owners similarly situated*. A party generally cannot show a sufficiently unique injury from a complaint that "any member of the community might assert." *Olsen*, 325 Mich App at 193. We reiterate that we do not consider whether plaintiff might have *standing* in an appropriate procedural context. However, some of the affiants are not even actual owners of nearby property; and otherwise all of the articulated concerns are either speculative, broad environmental policy matters, or pertain to harms that could be suffered by any nearby neighbor, business, or tourist. Irrespective of the seriousness of those harms, or of whether those harms might differ from the citizenry at large, the trial court properly concluded that plaintiff was not an aggrieved party pursuant to MCL 125.3605, so plaintiff's appeals were correctly dismissed. See *id*. at 194.

## V. OTHER CLAIMS

---

[6] We do not express any opinion as to whether they are, in fact, sufficient to confer standing.

Finally, in Docket No. 342588, when plaintiff appealed the ZBA's conditional approval of the condominium project, plaintiff joined two original claims. Its first original claim was entitled "declaratory judgment," but it sought injunctive relief and fees in addition to declaratory relief. Its other original claim was entitled "nuisance per se," but again it sought both injunctive and declaratory relief. In essence, plaintiff requested that the trial court find one of the components of the condominium project, the "boat basin," to be a nuisance and in violation of the township zoning ordinance, and to enjoin its construction. The trial court made no specific reference to these original claims when it entered its order of dismissal in that proceeding. The trial court only referred to dismissing "the Appeal from the Saugatuck Township Board of Appeals." Because "courts speak through their orders," *Piercefield v Remington Arms Co*, 375 Mich 85, 90; 133 NW2d 129 (1965), we can only infer that the trial court treated plaintiff's original claims as merely components or restatements of its appeal.

As we have discussed, the analysis of standing differs subtly but critically from the analysis of whether a party is aggrieved. The trial court and the parties did not have the benefit of *Olsen* at the time the trial court rendered its decision. It is not clear from the record whether the trial court regarded plaintiff's original claims as *truly* distinct, but it appears from plaintiff's complaint that plaintiff intended them to be distinct. We conclude, in any event, that the trial court erroneously failed to rule on plaintiff's original claims. We further conclude that plaintiff's standing to bring those claims, and, as applicable, the substantive merits of those claims, should be addressed in the first instance by the trial court. We again emphasize that we express no opinion regarding plaintiff's standing, and no such opinion should be inferred.

## VI. CONCLUSION

In Docket No. 346677, we affirm. In Docket No. 342588, we affirm the trial court's dismissal of plaintiff's appeal from the ZBA, but we remand for consideration in the first instance of plaintiff's original claims consistent with this opinion. We do not retain jurisdiction. Because of the importance of *Olsen* to this matter, and because *Olsen* was decided during the pendency of this appeal, we direct that the parties shall bear their own costs in both appeals. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause